ALBANY,
August, 1806.

Kenny
v.
Clarkson &
Van Horne.

</div>

## Kenny *against* Clarkson and Van Horne.

THIS was an action on a policy of insurance on the British sloop *Betsy*, the plaintiff, master, on a voyage at and from Charleston, S. C. to Jamaica, valued at $2000, at a premium of seven per cent. The cause was tried at the *New-York Sittings, the* 11*th of April*, 1805, before *Mr.* should remain in the name of the original owners until the balance was paid, when they were to give a regular bill of sale. K took possession of the vessel, and appeared as owner. In an action on a policy of insurance effected on the vessel in the name of K, it was held that he had an insurable interest. The owner, notwithstanding there be a *bottomry* bond on the vessel, may insure his interest generally, though the holder of the *bottomry-bond* must insure *eo nomine*. The *common law* of a foreign country may be proved by respectable and intelligent witnesses, but foreign *statutes* cannot be proved by *parol*. *It seems,* that if one party give notice to the other to produce a paper at the trial, which is called for and examined by him, that the party so calling for the paper is not bound to read it *in evi lence*. The practice is analogous to a bill of discovery, where the answer is not evidence but for the adverse party. Where a vessel was valued at $2000, and insured for that sum, and there was a prior insurance for $3000, the insured were allowed to prove that the vessel was worth enough to cover both policies.

<div align="right">

K purchased a
*British* ship of
merchants in
*Jamaica;* but
not being able
to pay all the
purchase-mo-
ney, it was a-
greed that she

</div>

<div align="center">3 E</div>

Justice *Thompson*, when the jury found a verdict for the plaintiff for a *total loss.* On a motion for a new trial, the following facts appeared in the case.

In *December,* 1799, the plaintiff purchased of Messrs. *Douglas, Stewart & Minot,* at *Jamaica,* the vessel insured by the defendants for the sum of $3000, at which time he paid $1800 in part. No bill of sale was executed, but the vessel was delivered to the plaintiff, and an agreement, in writing, was entered into between him and *Douglas, Stewart & Minot,* by which it was agreed, that the vessel should continue in the names of the vendors, until the residue of the purchase-money was paid, when they promised to deliver to the plaintiff the register and a regular bill of sale. The plaintiff remained in possession of the vessel from the day of purchase until the time of the insurance and subsequent loss. During the voyage insured, the *Betsy* was captured by a French privateer, and carried into *Guadaloupe,* and there condemned as enemy's property. Depositions taken under a commission, were introduced on the part of the defendants, to prove that by the statutes of *Great Britain,* a British vessel could not be lawfully transferred from one British subject to another, so as to enjoy all the advantages of a British vessel, without a new register in the name of the purchaser.

The defendants' counsel moved for a nonsuit, which being overruled, they then called on the plaintiff to produce two papers under a notice for that purpose, one called a bottomry bond, and the other an affidavit of the plaintiff, which had been exhibited to the defendants among the preliminary proofs. These papers were delivered to the defendants' counsel, who, after examining them, declined reading them in evidence, upon which they were read by the plaintiff's counsel. The reading was objected to on the part of the defendants, but allowed by the judge. It appeared that the plaintiff, on the 24th of *May,* 1800, had executed an instrument of mortgage on the *Betsy* and her cargo, at *Charleston,* to Messrs. A. and J. *M'Clure* of

that place, for 1075 dollars and 15 cents, advanced by them for necessary repairs and expenses. The instrument contained a clause authorising Messrs. *M'Clure* to get the vessel insured for $2000, on account of the plaintiff, which they were to receive in case of the loss of the vessel; they accordingly had the insurance effected in *New-York*, in the name of the plaintiff, for that sum. It appeared also from the plaintiff's affidavit, that a prior insurance on the vessel had been made at *Kingston*, for $3000, which had been paid, and that the vessel had cost the plaintiff seven thousand four hundred dollars, including repairs, which was said to be her value.

The judge, in his charge to the jury, was of opinion that the plaintiff had an insurable interest in the vessel; that as between the assurer and assured, it was not essential that the transfer of the property should have been according to the forms of the British statutes; that the plaintiff being the purchaser, and in possession, and having paid the consideration-money, had, at least, an equitable interest. But he left it to the jury to decide whether the plaintiff was in possession of the vessel, as master merely under the former owner, or as master and owner. He further stated that the right to insure was not taken away by the instrument of bottomry, which, however, was not technically a bottomry-bond; that the plaintiff had an insurable interest beyond the amount of the bond; that the value of the vessel was a question for the jury to determine; that by the terms of the policy all prior insurances were to be deducted, and the defendants having resorted to the plaintiff's affidavit, in order to show such prior assurance, the whole must be taken together; that though the vessel cost 3000 dollars, it did not appear what was her condition at the time of purchase, nor what repairs had been made, and she might have been worth much more at the time of insurance.

The points raised for the consideration of the court were, 1. That the plaintiff had not an *insurable interest*.

ALBANY,
August, 1806.

Kenny
v.
Van Horne &
Clarkson.

2. The interest intended to be insured was a *bottomry* interest, and ought to have been specified in the policy. 3. That the judge misapprehended the law in allowing the paper produced, on notice from the defendant, and not used by him, to be read in evidence, without proof. That the jury was misled by his not stating to them that they were not bound to believe the whole of the master's affidavit. 4. The verdict was against evidence, as there was no insurable interest beyond the prior insurance, and existing *liens* on the vessel.

*Pendleton,* for the defendants. This being a *British* vessel the court must look to the laws of *Great Britain* relative to that species of property. It is one of those questions which are to be decided by the laws of a foreign country, whenever they can be ascertained. To constitute an insurable interest, it must be such an interest as can be transferred to the insurer, so as to enable him to obtain the benefit of salvage. It will be said, however, that the plaintiff, by the agreement of purchase, had an equitable interest; but by the law of *Great Britain* no transfer of any property whatever in a vessel can be made, unless by a bill of sale pursuant to the *registering act,* as it is called. Every bill of sale, or instrument of transfer, must recite the register, otherwise it is absolutely null and void.

* 3 *Term,* 407. *Rolleston* v. *Hibbert.* 3 *Brown,* C. C. 571. *Hibbert* v. *Rolleston.* 5 *Term,* 711. *Camden* v. *Anderson.*

The vendee has neither a title at law, nor in equity.* If, therefore, the rights of the plaintiff, in relation to the vessel, are to be decided according to the laws of *Great Britain,* it is clear that he had no insurable interest. By the registering act of the United States, if the vendor omit to recite the register in the bill of sale, it is not therefore void. The vessel is merely deprived of certain privileges in relation to the revenue. She remains subject to the duties paid by foreign ships. It may, perhaps, be said that this is a matter of revenue, and that the court do not look to the revenue laws of foreign countries or inforce them. But this must be intended no farther than that our courts will not lend their aid to the collection of the revenues of

another country. The rule does not apply to questions of property. The plaintiff had no complete title until he had paid all the consideration-money.

2. It appears from the testimony that it was the intention of the plaintiff to make a bottomry; and that Messrs. *M'Clure* were directed to insure so as to cover the amount advanced. The nature of the interest ought to have been declared and specifically insured; and whether it were a bottomry or mortgage, if the party mean to insure it as such, the nature of the interest should have been specified in the policy.*

3. From the manner in which this instrument came before the jury, a general question arises, whether the party who has given notice to the other to produce a paper at the trial of a cause, is bound to read it when produced? In the case of *Sayer* v. *Kitchen*,† the defendant gave notice to the plaintiff to produce his books, and called for them at the trial. Lord *Kenyon* said, that this did not make the books evidence to the jury, if the party who called for them did not chuse to use them. The case of *Lawrence & Whitney* against *Van Horne & Clarkson*,‡ though not decisive, bears some resemblance to this question. The party called for a paper pursuant to a notice to produce it; the other side objected to his inspecting it, unless he consented to read it in evidence, and the objection was thought sufficient. Again, where an instrument is called for and read, and part is in favour and part against the person introducing it, though the whole must go to the jury, they still must weigh the credit of it, and may believe or reject it, according as it is confirmed or disproved by other testimony.

4. The court cannot go beyond the policy to ascertain the value of the vessel. In the present policy she was valued at 2000 dollars, and there was a prior insurance for $3000. If the valuation be conclusive, extrinsic evidence cannot be resorted to for the purpose of proving a greater value. The property having been fully covered by the

ALBANY,
August, 1806.

Kenny
v.
Van Horne &
Clarkson.

* 2 *Caines*, 19. *Williams* v. *Smith*, refers to the case of *Robertson*, decided in *January*, 1801, that a person holding a bottomry-bond has not an insurable interest unless there is a special clause in the policy expressly mentioning this particular interest.
† 1 *Espinasse's* cases, 210.
‡ 1 *Caines*, 277.

ALBANY,
August, 1806.

Kenny
v.
Van Horne &
Clarkson.

prior insurance, according to the clause in the present policy nothing was due to the plaintiff, and he ought to have been nonsuited at the trial.

*Evertson & Benson* for the plaintiff. 1. As the whole question is made to turn on the laws of *Great Britain*, in relation to the transfer of ships, it is necessary to inquire what evidence is now before the court of the existence of those laws? It is the testimony of a few merchants. But can the court admit the laws of a foreign country to be proved in this manner? It has been expressly decided by the British courts that foreign laws could not be proved by this kind of parol testimony.* If this evidence cannot be received, then the objection as to the provisions of British statutes, is of no avail.

* 3 *Espinasse's cases*. p. 58. *Boehtinck v. Schneider.* 4 *Espinasse's cases,* 75. *Hulle v. Heightman, Marshall,* 660.

2. But the plaintiff had an *insurable interest*. Admitting the British act to be as stated, still the plaintiff might abandon and transfer his interest to the insurers, and the property would pass, though not with the character and privileges of a British ship; for it is begging the question to say the plaintiff could not abandon. Abandonment affords no criterion as to the right to insure.† The vessel, the hulk, the thing itself, belonged to the plaintiff, was in his possession, and could be tranferred and delivered by him. But it is enough for the purposes of this action if the plaintiff had an equitable interest. The courts of *Great Britain*, from reasons of just policy, may carry rigidly into effect all the laws relative to navigation and revenue; but this court, sitting here, and between these parties, is not bound by any motives or principles of that nature. The commercial and local regulations of a foreign country are never rigidly inforced. The *lex loci* is not applied to destroy a *bona fide* contract, though it may serve to modify it. The British statute is merely to confer privileges on British ships.‡ A policy of insurance made in violation of the revenue laws of a foreign country will be supported; for no country pays any regard to the revenue laws of another.§

† 3 *Bos & Pullen,* 95. *Lucena v. Crauford.*

‡ *Abbot,* 51.

§ *Marshall,* 51, 53, 390. *Cowper,* 343. *Ante,* p. 94. *Randall v. Rensselaer.*

A *debt* which arises in *consequence* of an article insured, and which would have given a *lien* on it, may be insured.* So a *contingent and reasonable expectation* of interest is sufficient to entitle the party to insure.† The fact of possession by the plaintiff, with the other circumstances of ownership, is sufficient proof, without any written documents, to support this action.‡    In cases of insurance, it is not requisite to make out a regular title with perfect exactness. It is not necessary that the plaintiff should have any beneficial interest; for a mere agent, trustee, or consignee may insure.§    Putting out of view, therefore, the British statute, the plaintiff has a complete insurable interest. Besides, it may be observed that, this being a *valued* policy, the same strict proof of interest is not required, as if it were open.

3. It is objected that this was a bottomry interest, and ought to have been insured *specifically* as such.    The instrument produced is not a bottomry bond; ¶ but a mere mortgage.    If the party will *fish* for proof, by calling for papers, they ought to be read in evidence.    But if the paper be considered as not properly in evidence, then there is no proof whatever of any interest of that nature.

4. It does not appear that the other insurance was, in fact, prior to this policy; but if it were so, the sum inserted in the policy is not conclusive evidence of the value of the vessel.    It is a mere valuation of the interest or portion which the party wishes to insure, and does not preclude proof that the vessel was of greater value.

*Harison*, in reply.    1. All property is the creature of the country to which it belongs, and no man can claim a title to it different from that which the laws of the country confer.    This applies to personal, as well as to real property.    The plaintiff declares himself to be the owner of a *British* vessel, and describes her as such. · The obvious meaning of this description is, that he is the owner according to the laws of *Great-Britain*.    If, therefore, ac-

ALBANY,
August, 1806.

Kenny
v.
Van Horne &
Clarkson.

* *Marshall*, 218.
† *Marshall*, 219.
‡ 4 *East.* 136, 137. *Robertson* v. *French.* 2 *Marshall*, 611.

§ 3 *Bos. & Puller*, 75. *Lucena* v. *Crawford.*

¶ *Marshall*, 651.

ALBANY,
August, 1806.

Kenny
v.
Van Horne &
Clarkson.

cording to those laws, he had no insurable interest, he ought not to recover here; for he is bound to prove his ownership according to his declaration; and the case shows that the laws of *Great Britain* were an object of inquiry. There is no injustice in deciding on this point, according to the laws of that country. The plaintiff will be entitled to a return of premium. It is the same as if no contract had ever been made. Though evidence of the laws of a foreign country is not to be taken from any witness that may be picked up in the street, will it be said, that *documentary* evidence is indispensably requisite in every case, and that exemplifications of British acts of parliament must be obtained? If there be no documentary evidence, the best evidence that the nature of the case admits is sufficient. It is well known, that by Lord *Hawkesbury's* act, as it is called, that every bill of sale of a British ship, must recite the register, otherwise, it is a perfect nullity : No property is transferred; and the purchaser may recover his money back. In the case of *Camden* v. *Anderson*,* the arguments of the plaintiff's counsel were the same as those now urged in behalf of the present plaintiff; yet Lord *Kenyon* was of opinion, that since that act no title whatever, either legal or equitable, could be transferred by such an imperfect bill of sale.

* 5 *Term,* 709.

It is true that possession is *prima facie* evidence of property. But it is only presumptive evidence; and the rule is *stabitur præsumptioni donec probetur in contrarium.* This is not a mere *wagering* policy; but a real interest is represented to the defendants. Suppose the vessel taken by the French and recaptured by the British, there would be a restitution on payment of salvage. To whom? To the original British owners. So that on an abandonment in such a case, the assured would lose all the benefit of a restoration of the vessel. If the plaintiff could abandon no beneficial interest, ought he to be allowed to claim the benefit of a contract made under the appearance and representation of a transferable property? If the plaintiff had

disclosed the exact situation of the property, the contract would have been fair. A reference is not made to the laws of *Great Britain* to destroy the contract; but merely to show that there was no contract.

2. The evidence of the existence of a *bottomry*, independent of the paper produced, is as strong as that which existed in the case of *Robertson*, referred to in *Williams* v. *Smith*. Several witnesses speak of a bottomry-bond, and it appears to have been indorsed on the register. The calling for the instrument, did not make it evidence. If a party files a bill in chancery for a discovery, the defendant in his answer may set forth what is false, as well as what is true; and if he were bound to read the whole answer as evidence, his rights may be defeated by the act of the opposite party. On account of the expense and delay attending bills of discovery, the practice of calling for papers has been introduced, and it ought to be governed by the same rules. It would be unreasonable and unjust to make a paper evidence, because it was called for. The most injurious consequences would result from such a rule of evidence. A party may be surprised by the paper produced. None of the cases go the length contended for by the other side.* Though where a paper is produced and a part is read, the whole must be read; yet the jury are not bound to credit the whole; and, indeed, they ought to receive such evidence with great caution. The objection is, not that the judge was incorrect in leaving the whole to the jury, but that he ought to have added, they were not bound to believe the whole, otherwise, they might suppose, that they were precluded from examining into its truth.

* See *Peake's Law of Evidence, ch.* 2. sect. 4. p.107. 109. 2 *Ed.* 26 *Term*, 41.

3. The valuation of the vessel inserted in the policy is conclusive on the parties.† The practice is to insert the *real value*, though the whole is not insured. In case of loss, if the vessel had been worth 10,000 dollars, he could not have recovered more than 2000 dollars. If the whole value, as now pretended, had been inserted, the defend-

† *Emerigon*, 275.

ants would not, it is probable, have underwritten. If the insurance at *Jamaica* was prior to the present policy, there can be nothing recovered here. That it was prior, is manifest from all the evidence in the case.

SPENCER, J. delivered the opinion of the court. It has been objected that, by the 25th *Geo.* 3. *ch.* 60, the certificate of registry not having been inserted, the bill of sale was utterly null and void. It has also been objected that the plaintiff having given a bottomry bond to *A. & J. M'Clure*, for $2000, which sum they were authorised to get insured on the vessel, there was no insurable interest but the bottomry. With respect to the effect of the *British* statute, it is a sufficient answer to observe, that it has been proved only by *parol ;* for though courts of law will receive evidence of the common law, from intelligent persons of the country whose laws are to be proved, I think there exist strong reasons against such proof of foreign statutes, and this distinction, undoubtedly, prevails in the *English* courts. All the evidence in the case shows manifestly that the plaintiff had a reasonable and almost certain expectation of procuring all the muniments necessary to give him a title even under the *British* statute; he had paid nearly two thirds of the amount of the purchase money, he had the full dominion of the vessel, and according to the cases of *Le Cras* v. *Hughes*, and *Grant* v. *Parkinson*,\* his interest, independent of the question arising on the bottomry, was insurable.

That a bottomry interest cannot be insured, but *eo nomine* has been decided in this court ; the *M'Clures*, therefore, could not have been otherwise insured. The case of *Williams* v. *Smith*† is directly against the objection raised here. In that case a vessel was insured after being bottomed, and it was holden that the bottomry did not take away the right to effect an insurance for the owner. The circumstance of ignorance in *Williams* of the giving the bottomry when the insurance was effected, could have had no influence on the question. The plaintiff then, in my judgment, had an insurable interest.

\* *Marshall*, 84.
111. 219.

† *2 Caines*, 14.

The opinion I have already expressed on the bottomry, renders it unnecessary to examine the second objection ; because I have gone on the principle that there was a bottomry, when, if the paper read by the plaintiff without proof, were evidence, there appears to have been none. I must not, however, be understood as sanctioning the course adopted at the trial, in admitting the paper to be read without proof, because notice had been given to produce it, and it had been called for and perused. The case of *Lawrence & Whitney* v. *Van Horne & Clarkson*, settles nothing. The then chief justice expressing no decided opinion on the question, and the rest of the court were equally divided. It appears to me that the notice to produce a paper and calling for its inspection, ought to be considered as analogous to a bill for discovery, where most certainly the answer is not evidence but for the adverse party. I think it our duty to adopt such a course, as will not needlessly drive parties into equity for discovery ; I mention thus much that we may not be misunderstood on this point of practice.

I can perceive no impropriety in the judge's charge in saying, " as the defendants, for the purpose of showing such prior " insurances, have resorted to the plaintiff's affidavit, the " whole of it must be taken together." The *soundness* of that position has not been controverted ; but the counsel suppose that it ought to have been also observed, that the jury were not bound to believe that part of it which stated that the vessel, when she sailed on the voyage insured, was worth, and had cost $7000. If verdicts were to be set aside because the judge, in delivering a charge, omitted comments which might have been proper, there are but few verdicts that would stand the test. It is difficult to believe that the jury could have understood the judge, that they were to believe every part of the affidavit ; but that they might believe it, or not, in their discretion.

With respect to the last point, it appears that there was a prior insurance to the amount of $3000. The bottomry is stated by *Mitchell* to be $2000, and the value of the ves-

set $7000. What was the rate of premiums does not ap-
pear. If these sums be added to the probable premiums, there
would remain a sufficient sum to warrant this insurance, had
it been an insurance on interest. That this was a valued in-
surance at $2000, cannot affect the question ; the valuation
is only conclusive between the parties to this policy. The
only evidence that the valuation of this vessel was $7000, is
derived from the plaintiff's affidavit, which, it must be re-
membered, was read by the defendant to the jury, who, it
seems, believed that fact. I see no reason to differ from
the conclusions drawn by the jury, and am therefore
of opinion that a new trial ought not to be granted.

<div align="right">Judgment for the plaintiff.</div>