## COMMONWEALTH vs. JABEZ M. DAVIDSON.

In an indictment for cheating by false pretences, an allegation, that the prosecutor, by means of the false representations, was induced to deliver and did deliver to the defendant certain goods, "as upon a sale upon credit," is sufficiently proved by evidence of a sale of the goods to the defendant, on his promissory note payable in four months.

An indictment for cheating by false pretences alleged, that the defendant represented a firm of which he was a member to be then owing not more than three hundred dollars, and evidence was given of a representation by him, that the firm did not then owe more than four hundred dollars; — this was held to be a fatal variance.

One of the representations, set forth in an indictment for cheating by false pretences, and proved, was, that the defendant gave a false name; and the prosecutor testified that this misrepresentation had no influence in inducing him to part with his goods; it was the duty of the court, either at the time, or in the charge, to instruct the jury that such misrepresentation was not, upon the evidence, proved to have been an inducing motive to the obtaining of the goods by the defendant.

In an indictment for cheating by false pretences, it was alleged, that the defendant represented that he was a partner in trade with another person, who had put into the partnership a capital of one thousand dollars, which they (the defendant and his partner) then had invested and employed in their partnership business, and that the copartners were worth property of the value of fifteen hundred dollars, and did not owe debts amounting to more than three hundred dollars; — it was held, that evidence of the individual indebtedness of the defendant and his partner was not admissible to prove that the representations as to the solvency of the partnership were false.

Where a party, on notice and demand, produces books or papers, which are inspected by the party calling for them, and used as evidence by him, such books or papers thereby become evidence for the party producing them: and, therefore, where the partner of a defendant, who was on trial for cheating by false pretences, being called by the latter as a witness for him and examined in chief, produced the account books of the firm, on notice and demand by the prosecuting officer, who thereupon cross examined the witness with reference to two entries in the books, and exhibited them to the jury, with reference to those two entries; it was held, that the books thereby became evidence for the defendant, as to their entire contents, and not merely with reference to the two entries for which they were originally introduced.

THE defendant was indicted and tried in the municipal court of the city of Boston, for the offence of cheating by false pretences.

The indictment alleged, that the defendant, on the 2d day of February 1847, at Boston aforesaid, " with intent to cheat and defraud one Artemas Lee, one Samuel L. Harding, and one George H. Jones, merchants and copartners in trade, of their goods, under pretence of buying them fairly, did, then and there, unlawfully, knowingly and designedly, falsely

pretend and represent to said Lee, Harding, and Jones, that his name was J. Moulton, — that he was a copartner in trade with one William Berry, who had put into the partnership fund the sum and capital of one thousand dollars, which the defendant and Berry then had invested and employed in their partnership business, — that the said copartners were worth property of the value of fifteen hundred dollars, and did not owe debts amounting to more than three hundred dollars, — that the defendant had an order from the country for a lot of palm leaf hats, to be sent out of the city of Boston, which he wished to purchase on credit of the prosecutors, in the honest course of trade, — and that the prosecutors, believing such false pretences and representations, and being deceived thereby, were induced to deliver and did deliver to said defendant, as upon a sale upon credit to him and Berry, two hundred dozen of palm leaf hats, &c." The indictment went on, in the usual form, to negative the several represen-tations, alleging, that the defendant's name was not J. Moul-ton, — that Berry never invested one thousand dollars, or any other sum, in the capital of the firm, but was a poor person, — that the partners were not worth fifteen hundred dollars, but were poor and insolvent, and unable to pay their debts, — that their debts exceeded three hundred dollars, — that the defendant had no order, &c.

At the trial, Samuel L. Harding, one of the firm of Lee, Harding, and Jones, was called as a witness on the part of the prosecution, and testified, on his examination in chief, that said Davidson came to him some few days previous to the 2d day of February mentioned in the indictment, and said he wanted to purchase some of their goods, — that he represented himself as J. Moulton, and that he was one of the firm of William Berry and company, — that he, Harding, questioned him somewhat as to his responsibility, — that the defendant told him that his partner, Berry, put into the con-cern one thousand dollars, and that he himself had other property to the amount of several hundred dollars, which was in the concern, making a capital of fifteen hundred

Commonwealth *v.* Davidson.

dollars, at least, — that the concern of William Berry and company were not owing a sum exceeding four hundred dollars, — that he, Harding, thinking it a little unusual for a Boston man to be wanting their goods at that season of the year, asked him what he was going to do with the goods, and that the defendant answered that he had an order for them and was going to ship them south, — that, in consequence of these representations, he sold said Berry and company hats to the amount of about two hundred and forty-five dollars, and that on the said second day of February, they settled for them by giving Lee, Harding, and Jones their note for the amount at four months, and that the said note had not been paid.   On cross examination, the witness further testified, that he never knew or heard of said Moulton or Davidson before, and, hence,. that his representations that his name was Moulton had no influence on the mind of the witness, in determining him to give the credit.

On this state of the evidence, the defendant moved the court,

*First,* that the indictment be quashed, because it sets forth and alleges, that, by means of the representations therein mentioned, the said Lee, Harding, and Jones were induced to give the said William Berry and company credit on the said hats, whereas, in truth and in fact, the said Lee, Harding, and Jones gave Berry and company no credit on said hats, but, that on the delivery thereof, the said Berry and company paid for them by their promissory note payable in four months ;

*Second,* to rule, that, inasmuch as the indictment alleged one of the false representations to be, that the defendant represented William Berry and company as then owing not more than three hundred dollars, and the evidence was that the defendant represented, that they were not then owing over four hundred dollars ; — this was a fatal variance as to that particular charge in the indictment ;

*Third,* to rule, that, inasmuch as the said Harding testified, that the defendant's misrepresentation as to his name

had no influence in determining him to give the defendant credit, that that particular charge in the indictment should be taken from the jury, or that the jury should be instructed to lay it out of the case, for all purposes, except with reference to the question of an intent on the part of the defendant to cheat and defraud.

The court refused to quash the indictment and to rule as above suggested.

*Fourth,* evidence being offered on the part of the prosecution, tending to show, that the defendant and Berry, in their individual capacities, were owing debts to a larger or smaller amount, both before and after the said second day of February, the defendant objected thereto, as immaterial and irrelevant, but his objection was overruled, and the testimony admitted.

*Fifth,* the defendant's partner, William Berry, having been examined in chief, as a witness on his behalf, the county attorney, before commencing the cross examination, gave the said Berry notice to produce the account books of the firm of William Berry and company ; and the books being accordingly produced by him, the attorney examined them himself for two or three minutes, and then examined the said Berry with relation to two entries over erasures in them, one of which related to the purchase of the said palm leaf hats ; and the books were also examined by the jury in relation to the same two entries. The defendant thereupon requested the court to rule, that the county attorney, by so examining the witness with reference to the said books of account, and by so exhibiting them to the jury, had put the said books of account into the case ; but the court decided, that the books were only in the case with respect to the two entries on which the witness had been examined, and for the purpose of cross examination as aforesaid.

The court, in conclusion, instructed the jury, with reference to the several pretences set forth in the indictment, that it was not necessary to prove them all as set forth, but only in substance ; and that if any of the pretences so proved

were accompanied by the other circumstances essential to constitute the offence, it would be sufficient to sustain a verdict against the defendant.

The jury rendered a verdict of guilty against the defendant, who thereupon alleged exceptions to the rulings and instructions aforesaid.

. Other objections were also taken at the trial, which, on the hearing in this court, were waived.

*F. W. Sawyer*, for the defendant. 1. The indictment alleges, that the goods were obtained by the defendant, as upon a sale on credit ; but the evidence was, that the defendant gave his note for them, payable in four months. The giving of the note was a payment. There is consequently a fatal variance.

2. The indictment alleges, that the defendant represented that Berry and company were not then owing more than three hundred dollars ; the proof is of a declaration that Berry and company were not then owing more than four hundred dollars. The question is, whether this is a fatal variance. Allegations of matter of substance may be proved in substance ; allegations of matter of essential description must be strictly proved. 1 Greenleaf on Evidence, § 56. In general, allegations of time, place, quantity, quality, and value, are not required to be strictly proved. 1 Greenleaf, § 61. But there are exceptions, where such allegations operate by way of limitation, or description of other matters, in themselves essential to the offence or claim. 1 Greenleaf, § 63. The allegation of the amount of indebtedness, in the indictment, is clearly a limitation and description of a matter, which is essential to constitute the offence, namely, the alleged false representation, and should therefore have been strictly proved. The representation proved is not the same with that alleged.

3: The evidence of Harding having shown that the misrepresentation of the defendant, as to his name, had no influence on the mind of the former, in determining him to give the credit, the court nevertheless allowed such misrep-

resentation to go to the jury, to have its effect upon the case generally ; whereas it should have been laid out of the case altogether, or the jury should have been instructed to disregard it, except with reference to the intent. *Malsen* v. *Fry,* 1 Watts, 433 ; *Wideler* v. *Banks,* 11 Serg. & R. 134; *Ferguson* v. *Tucker,* 2 Harr. & Gill, 182 ; *Mercer* v. *Wamersley,* 5 Harr. & Johns. 32 ; *Stouper* v. *Latchshute,* 2 Watts, 167. The present is a stronger case. Here, there was no evidence, that the false name had any effect in inducing the credit.

4. Evidence of the individual indebtedness of the defendant and Berry was improperly admitted to show the indebtedness of the firm. The representation related to the condition of Berry and company, as copartners; and to show that this was false, it was quite immaterial whether the partners were individually indebted or not. No direct authority to this point has been found. In *Commonwealth* v. *Catlin,* 1 Mass. 8, on a charge of open and gross lewdness, evidence of secret or private lewdness was held to be inadmissible.

5. The ruling of the municipal court with regard to the books raises a very important point of law, which has not yet been decided in this commonwealth ; though well settled in some of the other states, in the federal courts, and in England. The rule, as thus established and recognized, is stated in 1 Greenleaf on Evidence, § 563, and in 4 Shepley, 224, together with the authorities on which it is founded. It was adopted and sanctioned in *Withey* v. *Gillespie,* 7 Serg. & R. 34; *Jordan* v. *Wilkins,* 2 Wash. C. C. 482, 484 ; *Randel* v. *Chesapeake & Del. Can. Co.,* 1 Harrington, 233, 284; *Penobscot Boom Co.* v. *Lamson,* 4 Shepley, 224. According to the rule, as laid down and established by these authorities, (and the case in 7 Serg. & R. 34, is precisely like the present,) the books of a party, when called for by the other side, and produced accordingly, and thereupon used in evidence by the party calling for them, become evidence for both parties. If these authorities are regarded by the court as decisive, the books of the defendant were in the case ;

and he should have had the benefit of all the evidence which they might have contained in his favor.

*S. D. Parker*, (county attorney,) for the commonwealth.

1. The motion of the defendant, that the indictment should be quashed in the midst of the trial, upon the refusal of which the first exception is founded, was a most extraordinary proceeding. The authority to quash an indictment, though within the discretion of the court, is never exercised, after a plea of not guilty; and, at all events, the motion could never have been allowed on the frivolous ground here suggested. The sale of the goods was no less on a credit, because a note was given payable in four months, than if it had been suffered to remain simply on book account. But, admitting that the giving of a negotiable promissory note operated as a payment, (and this is the extent to which the authorities go,) it does not appear that the note in question was negotiable.

2. The variance, which is the ground of the second objection, is entirely immaterial. It is never necessary to prove all the representations, nor any of them precisely as they are stated, but only in substance.

3. In regard to the third objection; — as the court could not lay the evidence out of the case, or strike out a part of it, or take the fact from the jury, — the request of the defendant was properly refused; but the point was sufficiently embraced in the general instructions, as stated on the record.

4. The evidence of individual indebtedness was rightly admitted. The term "copartners," as used in the indictment, is merely descriptive, and does not refer to a partnership. If the partners, individually, were insolvent, then the partnership could not be safe to trust; and this was the mischief to be guarded against.

5. The refusal of the court to allow the books to be used by the defendant, in the manner he desired, was clearly proper. This case differs from that cited from 7 Serg. & R. 34; in which the party limited his request to a single entry, and was allowed to use the book accordingly. In the present

case, the defendant did not ask the court to allow the books to be used as evidence to any specified point, but contended that they were evidence as to every thing which they contained. If the court had been asked to allow the books to be used as evidence for a particular purpose, and the request had been refused, the case would have stood upon the same footing with the case cited as above.

DEWEY, J. The first objection taken is, that the indictment sets forth " a sale obtained upon a credit ; " whereas the evidence shows, that the defendant gave the vendor a promissory note payable in four months from date. Upon this point, it is contended by the defendant, that the giving of such promissory note of hand is a present payment. In one sense it is so. By the judicial decisions of this court, the giving such promissory note is *prima facie* evidence of payment. It is only *prima facie*, however, and may be explained, and its effect as payment controlled, by the circumstances of the case. But in the sense in which a sale upon a credit is set forth in the indictment, the giving of a promissory note payable at a future day is entirely consistent with such allegation. The gist of the allegation is, that the goods were obtained upon a credit given to Davidson and Berry. That the goods and merchandize were thus delivered upon credit is equally true, whether the vendors charged the same in account on a credit of four months, or took the promissory note of the defendants, payable at a like future day, without any security therefor by an indorser, or otherwise. The sale in either case was upon a credit, and upon credit given to the defendant and Berry. This objection is, therefore, not well founded.

2. It was further insisted at the trial, that as the witness Harding, who testified to the alleged false representations, and to the sale of the property to the defendant by reason of such false representations, further testified that the misrepresentations by the defendant as to his name had no influence in determining the witness to sell on credit to the defendant, " that particular charge," to use the language of the bill of

exceptions "should be taken from the jury or laid out of the case for all purposes, except upon the question of intent to defraud and cheat." If by this request we are to understand nothing more to be asked, than an instruction to the jury, that the misrepresentation as to the name of the defendant was not upon the evidence proved to have been an inducing motive with Harding, to give the credit to the defendant for the payment of the goods, then it was a proper request, which should have been ruled upon, and the law thereon stated, during the progress of the trial ; whether in the general charge to the jury, or at an earlier stage, was not material. Whether this was sufficiently noticed in the general instructions to the jury, might require a more particular consideration, if the question of granting a new trial depended upon this exception alone.

3. It was also contended, that inasmuch as one of the allegations in the indictment charged the defendant with representing, that the firm of Berry and company did not owe debts amounting to more than three hundred dollars, whereas the evidence was, that the defendant represented that the firm did not owe more than four hundred dollars, there was such a variance as to be fatal to maintaining the indictment, so far as applied to that charge. Upon this point the general rule may be stated to be, that the pretence proved must correspond with that alleged in the indictment. 2 Stark. Ev. 563. But it is not necessary to prove the allegations of the indictment in every minute particular. The prosecutor must prove the pretence in substance as laid in the indictment. Archb. Cr. Pl. 157. There does not seem to be an entire uniformity in the adjudicated cases upon this point. The rule, as stated in 2 Russell, 1402, is that, upon an indictment for obtaining money by false pretences, such pretences must, at the trial, be proved as laid. The only case cited by Russell is that of *Rex* v. *Plaistow*, 1 Campb. 494. where the indictment alleged that the defendant pretended " that *he* had paid a sum of money into the Bank of England." The evidence was, that the defendant said, " the

4 *

money had been paid into the Bank of England." Lord Ellenborough held this to be a fatal variance, saying that an assertion that money had been paid into the bank was very different from an assertion that it had been paid into the bank by a particular individual.

In *Rex* v. *Parrott*, 2 Maule & Selw. 379, 386, lord Ellenborough seemed to hold, that where a party is charged with obtaining goods by false pretences, " the indictment should state the precise charge by distinct averments." On the other hand, in *The People* v. *Herrick*, 13 Wend. 87, the false pretence, as stated in the indictment, was, that the defendant declared that he had the sum of three hundred dollars in the hands of one John W. Squier; that Squier was then absent, but would return in three or four days ; and that as soon as he returned, he could obtain from him the said sum of three hundred dollars, and would pay the party to whom he made these pretences the sum of eighty-five dollars ; and that by means of such false pretences he obtained the signature of such individual to a note, as an indorser for him for that amount. The evidence was, that the defendant said he had one hundred and fifty dollars in the hands of Squier, and the counsel for the defendant contended that there was a fatal variance. Savage, C. J., in giving the opinion of the court, says, there is no doubt of the general correctness of the proposition that the fact must be proved substantially as alleged. But the court further held, that the indictment having alleged also that the defendant had no money in the hands of Squier, and this being shown by the facts in the case, a conviction might be sustained, although the false pretence was erroneously stated. In the present case, it seems to us, that the effect of the variance must depend upon the nature of the other allegations in the indictment, and the proof introduced to show that such other representations were the inducements that operated upon the mind of Harding, and caused him to sell his goods to the defendant on a credit. If the allegation that the firm did not owe more than three hundred dollars was the material

allegation, or, in other words, the substantial false pretence; we should be of opinion, that proof of a representation by the defendant that the firm owed only four hundred dollars, would be a fatal variance. On the other hand, it not being necessary to prove all the false pretences to have been made that are set out in an indictment, but only such as were material in inducing the credit, this indictment may be maintained upon proof of the other facts alleged, if in the opinion of the jury they constituted the pretences that induced the sale and delivery of the property to the defendant. In looking at this indictment, we perceive that it alleges that the defendant represented to Harding that Berry had put into the copartnership the sum of one thousand dollars, which they *then* had invested in the partnership business, and that the copartnership was worth property of the value of fifteen hundred dollars. The indictment then alleges that Berry never did invest or put one thousand dollars into the capital of the copartnership, and never put in or invested any capital in the business of said copartnership, but was a poor person, and the said copartners were not worth fifteen hundred dollars, but were poor and insolvent persons, and unable to pay their debts.

It was quite competent for the government to submit this case to the jury upon proof of the other allegations, independent of this as to which the variance exists, and if the other allegations were established, and if they were shown to be false pretences, and that by means of those pretences the credit for the goods was obtained, the jury would be well authorized to find the defendant guilty, although there was no proof that he made the further alleged pretence that the firm did not owe three hundred dollars. The proper course, however, would be, in such case, for the presiding judge to instruct the jury, that the alleged false pretence as to the indebtedness of the copartnership not exceeding three hundred dollars was not proved, and that a conviction of the defendant could only be proper upon proof of the other false pretences and showing that they induced the sale of the goods on credit

It is supposed by the counsel for the government, that the law upon this point was sufficiently and properly presented under the general instructions given by the presiding judge in the charge to the jury ; that it was correctly stated to the jury, that in such cases it is not necessary to prove all the allegations set forth, but if the allegations are substantially proved, and the pretences proved are shown to be accompanied with all the other circumstances required to constitute the offence charged, it would authorize a verdict against the defendant. This instruction was correct, but it leaves the point of variance in the particular matter which is now under consideration unnoticed, and its effect not judicially declared.

4. Another point, of more general bearing and importance, is the question raised upon the trial as to the rule of law, where one party gives notice to the opposite party to produce at the trial his account books, and upon their production under such call the party calling for them inspects the books and introduces them to the jury, so far as to cross examine a witness as to two entries therein, and the books are examined by the jury in relation to those entries, — whether the books are not thereby put into the case generally, and not merely as to the two entries made the subject of examination by the party calling for the books.

The English rule seems to be, that if the party calling for the books inspects them so far as to become acquainted with their contents, they are thereby made competent evidence, and may be used by both parties. 1 Gr. Ev. § 563. In the case of *Calvert* v. *Flower*, 7 C. & P. 386, the rule was applied in the case of an account book, where the party calling for it had taken the book and turned over several pages, it being held, that by so doing he had made the book evidence in the case. It is, however, said by Mr. Greenleaf, in his treatise on evidence, that in the American courts the law is not entirely settled upon this point. In the case of *Penobscot Boom Corp.* v. *Lamson*, 4 Shepley, 224, and in that of *Randel* v. *Ches. & Del. Can. Co.*, 1 Harrington, 233, the decision was in accordance with the English rule.

In New York the English rule was questioned by Spencer, J., in the case of *Kenny* v. *Clarkson*, 1 Johns. 385, 395, and by Thompson, J., in the case of *Laurence* v. *Van Horne*, 1 Caines, 276, 286.

In *Withers* v. *Gillespy*, 7 S. & R. 10, it was held, " where books are produced on notice and entries are read in evidence by the party calling for them, the party producing them may read other entries necessarily connected with the former entries." The only conflict in the cases, or real doubt that seems to have arisen in the reported cases, is, whether the mere act of inspecting and perusing the books by the party calling for them makes them evidence.

Merely calling for the books, although in answer to such call they are produced, will not make them evidence. It would not by the English rule, as stated 1 Phill. Ev. 440, where it is said, if one party calls for books in the possession of another, but declines to use them when produced, the mere calling for them will not make them evidence ; but if the party calling for them inspects them, he thereby does make them evidence, although he does not introduce them. The result of the examination of the cases seems to be, 1. That all the authorities agree that mere calling for the books is not enough to make them evidence ; 2. That whether calling for the books of the opposite party and inspecting them, and doing nothing more, makes the book evidence, is a *mooted point ;* 3. That the books, when produced upon notice, if inspected by the party calling for them, and actually used as evidence by him, are thereby made evidence for the other party. 3 Phill. Ev. (4th Am. Ed.) 1191.

The present case falls clearly within the last class, and the book of accounts was therefore made competent evidence for both parties. We do not think its admissibility was to be restricted to the two items selected by the party introducing it. But as to every thing bearing upon the issue before the jury, that was duly entered upon the book, it might be used by both parties. All irrelevant matter would of course be properly excluded, and this would embrace all foreign matter

entered therein not properly composing any portion of a book of accounts.

The use of the book of accounts as evidence was too much restricted on the trial of the present case, and the exceptions taken to the ruling on this point are sustained.

5. The remaining question is that arising upon the admission of evidence of the individual indebtedness of the defendant, and also of Berry, the partner. The objection taken to the competency of this evidence was, that the false pretence set forth in the indictment was confined to the solvency and pecuniary ability of the firm of Berry and company, and that such solvency and pecuniary ability might well exist as to the firm, although the members of that firm might individually be insolvent as respects their private creditors. This objection seems to us to be well taken. The inquiry ought in strictness to be confined to the partnership debts and partnership assets.

*New trial ordered.*