NEW-YORK,
May, 1811.

HAFF
v.
MAR Ins. Co.

Haff *against* The Marine Insurance Company.

THIS was an action on a policy of insurance on the schooner *Lucy*, at and from *New-York* to a port in *North Carolina*, and at and from thence to *Port Antonio*, and *Annotto Bay*, in *Jamaica*, valued at 3,000 dollars. The policy contained the clause, " That if the vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten, that the assurers shall not be bound to pay their subscription on the policy." The vessel arrived at *Port Antonio*, after experiencing violent storms and very bad weather, on the voyage from *North Carolina;* so that it became necessary to have her surveyed. Accordingly a survey was ordered, which was made the 29th of *October*, 1806, by three surveyors, under oath. This survey, under the hands and seals of the surveyors, was among the preliminary proofs, and produced in evidence at the trial. It stated, that " her timbers, fore and aft, were rotten, and the oakum worked out of the wood ends forward; the foremast sprung, her main cross-trees, main transom, rudder head, deck knees, and her cieling in general, rotten; her flying jib, foresail, topsail, and all the other sails, with the hulk, not sufficient to proceed on her intended voyage." And the survey concluded with the " opinion, that she was not worthy of the necessary repairs, and ought to be sold for the benefit of all concerned." The plaintiff read in evidence the deposition of the master, which stated that the vessel, during her voyage from *North Carolina* to *Port Antonio*, sustained great damage in her hull, sails, rigging and masts, and could not be repaired but at an expense greatly exceeding her value ; and on that ac-

A policy of insurance contained a clause, " that if the vessel, upon a regular survey, should be declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage, on account of her being unsound or rotten, the insurers should not be bound to pay their subscription." The *survey* stated injuries arising from storms, besides the decay of her timbers. It was held, that as the survey and condemnation for unseaworthiness did not proceed on the *sole* ground of rottenness or decay, but on that fact connected with other matters, it was not conclusive, and the insured were entitled to recover.

count it was determined to break up the voyage and sell the vessel, as best for all parties concerned, which was accordingly done. The plaintiff's counsel then offered further evidence of the seaworthiness of the vessel, at the time she sailed on her voyage, and that she was not unsound or rotten when she was surveyed; but the counsel for the defendants objected to the evidence, and moved for a nonsuit, on the ground that the survey at *Port Antonio* was conclusive evidence of the unseaworthiness.

The judge overruled the motion, considering the survey as *prima facie* evidence only; but the point was reserved.

The plaintiff's counsel then offered to prove that *William Rogers*, a master of a vessel, one of the persons who made and signed the survey at *Port Antonio*, had declared, and which declaration was contained in his deposition taken before a notary in *New-York*, " that the vessel was not condemned on account of rottenness or defectiveness of her timber or hull, but because the injuries she had received were such as to render it impossible to effect her repairs at *Port Antonio*, without an expense equal to or beyond her value when repaired." The counsel for the defendants objected to this proof; and the judge refused to admit it, unless the notary would swear that he had read the deposition to *Rogers*, or knew its contents, when *Rogers* made oath to it; and the notary not being able to prove this, but merely that such a deposition had been sworn to before him, the judge rejected the proof.

Two masters of vessels and a ship carpenter were examined as witnesses, on the part of the defendants, who testified, that a vessel being rotten, as described in the survey, would not be fit to go to sea; but one of the witnesses said he knew the vessel insured, and that she was a good vessel, and perfectly seaworthy, when she left *New-*

*York*, on the voyage insured ; all the witnesses said, that if she was seaworthy when she left *New-York*, her timbers would not have been in the condition described in the survey.

The judge charged the jury, that if they believed the facts stated in the survey to be true, they ought to find for the defendants; but if they believed the witnesses for the plaintiff, they ought to find for him, saving the question as to the conclusiveness of the survey, for the decision of the court. The jury found a verdict for the plaintiff for a total loss.

*Wells*, for the plaintiff. The clause in the policy alters the settled law on the subject, as between the parties. It transfers the inquiry, as to the truth of the fact, to the place where the survey happens to be made. It gives a decided advantage to the insured over the insurer; and the court will not, under these circumstances, feel disposed to go beyond the strict letter of the contract, in order to hold a survey conclusive evidence of the fact. We contend that the survey is only *prima facie* evidence, and may be contradicted.

In the case of *The Marine Insurance Company of Alexandria* v. *Wilson*,[*] the counsel for the insurers, Mr. *Lee*, argued that the proof of unsoundness or rottenness must have *reference* to the commencement of the voyage; and though the supreme court of the *United States* did not decide the general question whether such a survey was conclusive evidence, yet they held that as there was no evidence referring the unsoundness to the commencement of the voyage, the report of the surveyors, itself, was not sufficient evidence of the fact. In the case of *Garrigues* v. *Coxe*,[†] it was held that the causes of condemnation stated in the survey must be confined to unsoundness or rottenness, and not be founded on accident or other circumstances. The case of *Watson* and *Hudson*

NEW-YORK,
May, 1811.

HAFF
v.
MAR. INS. CO.

[*] 3 *Cranch*, 187.

[†] 1 *Binney's Rep.* 592.

NEW-YORK,
May, 1811.

HAFF
v.
MAR. INS. Co

* Condy's edit.
of Marshall on
Ins. 159. b. note.
† 2 Binney's
Rep. 394.

v. *The Insurance Company of North America,** in the circuit court of the *United States*, for the district of *Pennsylvania, April* 8, 1808, was decided on the same principle, that the survey or condemnation must proceed on the *sole* ground of *unsoundness* or *rottenness*, in order to be conclusive. The case of *Amroyd* v. *The Union Insurance Company,*† decided in the supreme court of *Pennsylvania*, 1808, is very analogous to the present. The survey in that case stated injuries by storm, as well as from decay, and the surveyors concluded by saying, "therefore they are of opinion the vessel is unworthy of repair and unfit for sea." The court held the condemnation to be no bar, not being founded on unsoundness or rottenness. How can it be said that the condemnation, in such a case, is founded on the rottenness of the timbers, more than on the injuries arising from storms and accident?

*Colden,* contra. The clause in the policy is clear and explicit; and being the contract of the parties, the court are bound to give it effect. It is not, if the vessel is condemned for rottenness only, but if she is declared unseaworthy, by reason or on account of being unsound or rotten. It is not necessary that the unsoundness should be the consequence of rottenness only; she may become unsound from accidents arising during the voyage. Though the survey does not conclude that the vessel was unsound, by reason of rottenness, yet it states facts from which that conclusion necessarily results. Every material timber, every part of the hull, is found to be rotten; and though other defects are mentioned, they do not impair the effect of the survey, when sufficient facts are stated to justify the conclusion that she was unseaworthy on account of being rotten.

This clause was introduced into policies, for the express purpose of making these surveys conclusive evidence of the fact. If they are not to be considered as conclusive, the clause is nugatory; for before the intro-

duction of it into the contract, surveys were always held to be *prima facie* evidence.

Again, the declarations of *Rogers* cannot be admitted to contradict the document subscribed by him, and which made part of the preliminary proofs.

*Per Curiam.* The survey, and condemnation, in this case, do not proceed on the *single ground* that the vessel was unsound or rotten, but on that fact, connected with other defects and circumstances; and it is, therefore, impossible for the court to say, whether the single cause of rottenness would have been deemed by the surveyors to be, of itself, a sufficient cause of condemnation for unseaworthiness. The survey, then, in this case, is not to be received as conclusive. The cases of *Garrigues* v. *Coxe*, and *Amroyd* v. *The Union Insurance Company*, which have been cited, are in point; and if the case were otherwise doubtful, those decisions deserve great weight.

The evidence of the declaration of *Rogers* was admissible; because, though the plaintiff offered the survey as preliminary proof, yet the defendant offered it as proof in chief; and the plaintiff had a right to show the contradictory declarations of *Rogers*, as a witness for the defendant. The plaintiff is entitled to judgment.

Judgment for the plaintiff.(*a*)

(*a*) See 4 *Johns. Rep.* 132. S. C.