## PENOBSCOT BOOM CORPORATION *vs.* WILLIAM P. LAMSON & *al.*

A counsellor or attorney at law, regularly admitted to practice, is not under the necessity of producing any special power of attorney to act for individuals or corporations in Court; and his statement that he does represent a person or body corporate is sufficient.

Corporations originating according to the rules of the common law, must be governed by it in their mode of organization, in the manner of exercising their powers, and in the use of the capacities conferred; and when one claims its origin from such a source, its rules must be regarded in deciding upon its legal existence.

But the legislature may create a corporation, not only without conforming to such rules, but in disregard of them; and when a corporation is thus created, its existence, powers, capacities, and the mode of exercising them, must depend upon the law creating it.

The legislature have power to permit one person, or his successor, to exercise all the corporate powers, and to make his acts, when acting upon the subject matter of the corporation and within its sphere of action and grant of powers, the acts of the corporation.

The grant of corporate powers to one person, *and his associates and successors,* does not require of such person, that he should take associates before the act can take effect, or corporate powers be exercised, but virtually confers on him alone the right to exercise all the corporate powers thereby granted.

The acceptance of the charter may be presumed from the exercise of the corporate powers therein conferred.

The dissolution of a corporation can take place only, either by an act of the legislature, where as in this State power is reserved for that purpose; or by a surrender of the charter which is accepted; or by a loss of all its members, or of an integral part, so that the exercise of corporate powers cannot be restored; or by forfeiture, which must be declared by judgment of court.

In an action by a corporation, the defendant cannot take advantage of any abuse or misuse of the corporate powers, not applicable to the question in controversy; or object that no mode of service, or of attachment, or means of redress or relief, is provided.

Pleading the general issue, admits the legal existence, and competency of the corporation to bring the suit.

Where the charter authorized the erection of a boom, parol evidence is admissible to show that the boom was erected by the corporation.

The act of incorporation provided, " that all logs rafted at said booms, or its branches, shall be measured, and their quantity ascertained by a person to be appointed by the surveyor general of *Bangor,* should such a surveyor be appointed, otherwise by a surveyor appointed by the selectmen of said

town." There was no act in existence, authorizing the appointment of a Surveyor General of *Bangor*, but one was soon after passed, authorizing the appointment of a Surveyor General for the county, to reside at *Bangor*, and an appointment was made under the act. *It was held*, that if the logs were measured by a person appointed by the Surveyor General of the county, although called a *scaler* of logs, instead of a *surveyor*, it was a sufficient compliance with this requirement of the act of incorporation.

If a book or document be called for by a notice to produce it, and it be produced, the mere notice does not make it evidence; but if the party giving the notice takes and inspects it, he takes it as testimony to be used by either party, if material to the issue.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. presiding.

Assumpsit for boomage of logs, asserted to belong to the defendants. The writ was dated, *December* 21, 1835, the action was entered at *January* term, 1836, and continued to *October* term following, when the defendants called for the right of the attorneys acting for the corporation to appear and act therefor. The Judge ruled, that it was unnecessary. The action came on for trial at *January* term, 1837, when the general issue was pleaded, and a brief statement was filed, denying the existence of the corporation then or at any time; alleging that the charter *by and under which the plaintiffs claimed a corporate existence* had been forfeited by *non user*; that there had been no organization under the same; that it was dissolved by a total loss of all its members; and that it had never complied with the provisions of the act of its incorporation by a total neglect to choose any officers under said act. To support the action, the act incorporating the *Penobscot Boom Corporation, February* 13, 1832, *Spec. Laws, c.* 236; a bill of sale from *Rufus Dwinal*, named in the act, to *Samuel Veazie*, dated *February* 17, 1832, conveying one half of the charter, booms, and property; and another bill of sale from *Dwinal* to *Veazie*, dated *April* 1, 1833, conveying the other half; were introduced. Also, a book called and offered as the records of the corporation, but not verified by the oath of any one; " to the sufficiency of which, to prove the organization, as well as to the introduction of all the testimony offered by plaintiff, the defendants' counsel objected. The objection was overruled, and a part of the book was read to the jury. The defendants' counsel having called for the records."

The charter and the bills of sale were copied into this book, and the following vote appeared therein. " *Bangor, April* 2, 1833. I, *Samuel Veazie*, being the only owner of the *Penobscot Boom Corporation*, have this day had a meeting of said corporation at my house, and appointed myself to the office of President of said corporation, and clerk of said meeting, with full powers to make all records, and to transact all business that may be necessary for carrying said corporation into full effect, and to receive and collect all tolls that may be due from time to time, and pay all bills against said corporation, and to continue until some person is chosen or appointed in my stead. A true record. Attest, *Samuel Veazie*, Clerk." The plaintiff then proved, that the logs were surveyed in the boom by *Davis* and *Young*, scalers, appointed by the Surveyor General of the county of *Penobscot*, under the statute of *March* 2, 1833, *Spec. Laws, c.* 373. *Young* also testified, that he took charge of the boom in the spring of 1833, and had retained it since ; that a large amount had been expended on the boom by *Veazie* ; and that the witness is the general agent of *Veazie* at *Oldtown*, and drew on him for money and paid him money received for boomage, and knew nothing of the corporation of his own knowledge. It was proved that the boom was erected in the spring of 1832, under the direction of *Dwinal*, and has been in operation ever since. The defendants requested the Court to order a nonsuit, but the Judge refused. The defendants then proved, that the boom, when full, prevented the free passage of rafts and logs. The counsel for the defendants, requested the Judge to instruct the jury, that there was no such corporation as alleged ; that there was no vote or direction of the *Penobscot Boom Corporation*, at any regular meeting of the corporation, authorizing the erection of the boom ; and that the action was not maintainable. The Judge did not thus instruct them, but directed them to inquire, if the evidence submitted to them proved the existence of such a corporation as is named in the writ; and if not, they would return a verdict for the defendants. But if such corporation had been proved, it not being denied, that the sum claimed in this action was due, if the contents of the logs had been legally ascertained, they would find for the plaintiff. They were also directed to inquire, if the boom had been erected and continued by authority of the *Pe-*

*nobscot Boom Corporation.* The jury returned a verdict for the plaintiff, and being inquired of at the request of the counsel for the defendants, stated that they found the boom to have been erected and continued by the authority of the *Penobscot Boom Corporation.* The defendants excepted.

*Rogers* and *J. Appleton,* for the defendants, argued in support of the grounds taken at the trial. They contended, that the defendants might show that the plaintiff had no corporate existence, either under the general issue, or by plea in abatement. But here the non-existence appears from the plaintiffs' own showing, and when that appears to the Court from its own evidence, it is a fatal defect at any time. They cited on this point, 19 *Johns. R.* 300; 2 *Cowen,* 378; 11 *Mass. R.* 25, 119; 5 *Pick.* 238; 14 *Mass. R.* 240; 1 *B. & P.* 43; 1 *Saund.* 340; 6 *N. H. Rep.* 199; 4 *Peters,* 480; *Angel & Ames on Corp.* 382; 6 *Wheat.* 260; 16 *Mass. R.* 245; 3 *Fairf.* 15; 1 *Dane,* 464, *sec.* 25; 7 *Conn. R.* 219; 3 *Mass. R.* 364; 8 *Pick.* 90; 4 *Burr.* 2200; 3 *T. R.* 240. This is neither a corporation sole nor aggregate. Not sole, because the charter was to *Dwinal* and his associates, mere private persons. And is not aggregate corporation, because it has not the powers of one and has not organized as such. 1 *Bac. Ab. Corp.* A; *Angel & Ames,* 19, 275; 10 *Mass. R.* 91; 5 *Mass. R.* 362; 10 *Mass. R.* 343; 14 *Mass. R.* 132. That the lumber should have been surveyed, in the manner pointed out by the statute, as a prerequisite to the plaintiff's right to recover. The persons who surveyed the logs, were not appointed by the " Surveyor General of *Bangor,*" as the charter prescribes, and they were scalers, and not surveyors. 7 *Greenl.* 480; 17 *Mass. R.* 258; *American Jurist,* No. 26, 379. The books were improperly admitted in evidence. 6 *Binney,* 416; 14 *Mass. R.* 180.

*A. G. Jewett,* for the plaintiffs. The party waives all right to call for power of the counsel to appear, unless the call is made the first term. *C. C. Pleas Rule,* 6. This is a mere discretionary act, and not the subject of exceptions. 3 *Greenl.* 216. And there is no difference in this respect, between corporations and individuals. 9 *Wheat.* 738. The legal existence of the plaintiffs, as a corporation, cannot be denied, but by plea in abatement. 3

*Fairf.* 382 ; 4 *Mason,* 436 ; 1 *Sumner,* 578 ; 1 *Peters,* 450 ; 10
*Mass. R.* 91, 361 ; 3 *Wend.* 291 ; 12 *Wheat.* 64 ; 7 *Pick.* 371.
The defendants have treated the plaintiffs as a corporation in con-
tracting a debt to them, and it is too late to deny it, when called on
for payment.    8 *Greenl.* 365 ; 2 *Fairf.* 227.    No advantage can
be taken of any *non user* in a collateral action.    It is a business
solely between the corporation and the State.    When the charter
is taken away from them, all duties, as well as all powers cease.  2
*Kent,* 312 ;  5 *Johns. Ch. R.* 366 ;   6 *B. & Cr.* 703 ; 9 *Cranch,*
51 ; 8 *Wend.* 652 ; 4 *Paige,* 481 ;  5 *Mass. R.* 230 ;  4 *Gill &*
*Johns.* 121 ; 6 *Cowen,* 23 ; 1 *Hall,* 198.    A solemn vote of the
corporation to that effect will not dissolve it.    14 *Pick.* 68.    The
survey was in the manner provided by law, and that is all the
charter could have intended.    The reference in it was to an act,
not in existence, and which never did exist in name, though it did
in substance.   7 *Greenl.* 474.   If a party calls for books, he
makes them evidence.    1 *Carr. & Payne,* 8 ; 5 *Esp. R.* 235 ; 4
*Esp. R.* 21.

The opinion of the Court was drawn up by

SHEPLEY J. —When one person professes to represent another,
or a body corporate, he should exhibit his authority ; and attorneys,
according to the practice of many courts, appear by warrant of at-
torney ; but in our practice, where the law recognizes certain per-
sons as officers of the court, and entitled as such to represent oth-
ers, as an official duty, no such warrants have been required; and
the statement of the attorney, that he does represent a person,
or body corporate, has been deemed sufficient.    Should he abuse
such power, he may be deprived of his privilege, and be subjected
to an action for damages by the party injured.    The sixth rule of
the Court of Common Pleas requires no more than such a state-
ment by the attorney, and it would seem, that by the rule, the
court may give him leave to appear without requiring such state-
ment.    The objection having been overruled, the court must be
regarded as having granted such leave, if it were necessary.    No
such rule exists in this court.    The Supreme Court of the *United*
*States* appears to entertain this opinion respecting the rights of at-
torneys to represent others, according to our practice.    *Marshall*

*Ch. J.* says, "certain gentlemen, first licensed by government, are admitted, by order of court, to stand at the bar, with a general capacity to represent all the suitors in the court. The appearance of any one of these gentlemen in a cause, has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any State, or of the Union. This universal and familiar practice, then, of permitting gentlemen of the profession to appear, without producing a warrant of attorney, forms a rule, which is as applicable in reason to their appearance for a corporation as for a natural person." *Osborn* v. *United States Bank*, 9 *Wheat.* 738.

The existence of such a corporate body is denied, and it is said that it does not come within the legal description of a corporation, either sole or aggregate, as defined by any code of laws. Corporations originating according to the rules of the common law, must be governed by it in their mode of organization, in the manner of exercising their powers, and in the use of the capacities conferred. And when one claims its origin from such a source, its rules must be regarded in deciding upon its legal existence. The legislature may however create a corporation, not only without conforming to such rules, but in disregard of them; and when a corporation is thus created, its existence, powers, capacities, and the mode of exercising them, must depend upon the law of its creation. It was the pleasure of the legislature in this case to create a corporate body, without requiring a conformity to the usual mode of organization known to the law. The grant is to one person, who was at liberty to associate others, or to have a succession without it. No provision is made for a division of the property allowed to be held into shares, or for the call of any meeting, or the choice of a clerk, or any other officer, or the keeping of any records, or any mode of organization. And yet many important powers and privileges are granted with an evident design to permit their exercise. The grant being to one person and without any such provisions, the inference necessarily is, that it was the intention of the legislature to permit that one person or his successor to exercise all the corporate powers, and to make his acts, when acting upon the subject matter of the

corporation and within its sphere of action and grant of power, the acts of the corporation.    There does not appear to be any other mode of carrying into effect the intention of the legislature. And if there are doubts, whether the person controlling the corporation has acted in behalf of the corporation, they are necessarily to be solved by proof.    And if any evils have arisen or shall arise from any proceedings under the act, the legislature may provide a remedy.    The answer to the arguments against its existence arising from a want of organization and choice of officers is, that the act requires them.    In the case of *Day* v.  *Stetson*, 8 *Greenl.* 365, where a charter was granted to one, and provision was made for taking associates and calling a meeting of them, it was decided, that it was a condition subsequent, and that the neglect would not prevent the act taking effect, or the exercise of the powers granted by it.    The case finds, that " it was proved that the boom was erected under the direction of *R. Dwinal*, and went into operation in the spring of 1832, and continued so ever since ;" and this sufficiently proves the acceptance of the act of incorporation, for it could not be lawfully done but by virtue of the act, and the presumption of law is, that one acts lawfully when he may do so by a special grant of authority for that purpose.    There is not the same finding in all the other cases, but there is sufficient testimony to prove that the boom was erected, and that it has been maintained by the one professing to own the franchise and to act under it.    And the acceptance may be presumed from the exercise of the corporate powers. *Bank of the United States* v. *Dandridge*, 12 *Wheat.* 71 ;  *Trott* v. *Warren*, 2 *Fairf.* 227.    And the act of incorporation, with proof of the exercise of the corporate powers since 1832, was sufficient evidence of the existence of the corporation.    *Utica Ins. Co.* v. *Caldwell*, 3 *Wend.* 296 ;  *Day* v. *Stetson*, 8 *Greenl.* 365. There being no provision for the call of any meeting, or for the choice of any officers, when a sale of part of the franchise to *Veazie* required some evidence of the assent of two minds to perform a corporate act, there might be more difficulty in proving the acts of the corporation, but it is not perceived, that the mode of proof would be changed.

It is contended also, that if the corporation has existed, it has been dissolved.    In what manner corporations may be dissolved,

and what will not operate as a dissolution, has been determined in many decided cases. A corporation will not be dissolved by a sale of the franchise ; or of all the corporate property and a settlement of all its concerns and a division of the surplus ; or by a cessation of all corporate acts ; or by any neglect of corporate duty ; or any abuse of corporate powers ; or by doing acts which cause a forfeiture of the charter, without a judgment declaring such forfeiture. Such dissolution can take place only, 1. by an act of the legislature, where, as in this State, power is reserved for that purpose ; 2. by a surrender, which is accepted, of the charter ; 3. by a loss of all its members, or of an integral part, so that the exercise of corporate functions cannot be restored ; 4. by forfeiture, which must be declared by judgment of court. *Shee* v. *Bloom*, 5 *Johns. Ch. R.* 367 ; *Trustees of Vernon Society* v. *Hills*, 6 *Cowen*, 23 ; *Bank of Niagara* v. *Johnson*, 8 *Wend.* 645 ; *Wilde* v. *Jenkins*, 4 *Paige*, 481 ; *Canal Company* v. *Rail Road Company*, 4 *Gill & Johns.* 121 ; *Russell* v. *McLellan*, 14 *Pick.* 63 ; *Revere* v. *Boston Copper Company*, 15 *Pick.* 351 ; *Porter* v. *Kendall*, 6 *B. & C.* 703 ; 2 *Kent*, 312.

Nor can a defendant take advantage of any abuse or misuse of the corporate powers, or object, that no mode of service, or of attachment, or means of redress or relief is provided. This would prove an oversight in the legislation, which ought to require immediate attention ; but it does not excuse a defendant from a performance of his duty, that the legislature has not provided for his obtaining redress for an injury, which he has suffered. As it appears to be important to have a decision upon the rights of this corporation these objections have been considered, although this defendant, according to our practice, is not in a position to call for proof of the existence of the corporation, not having pleaded it in abatement. *Trustees in Dutton* v. *Kendrick*, 3 *Fairf.* 384.

It will be perceived, that in speaking of the acceptance of the act of incorporation the objection that the boom is not owned by the corporation, has in substance been answered. The legal inference is, that the money which was expended by the owner of the charter was expended under it, and that the boom thereby became corporate property. The evidence confirms this presumption. The person who expended the money, could not be permitted to

say, that he had not acted legally by virtue of the authority granted, but had placed a nuisance in the river. The jury were authorized to find, that it was erected by the corporation, and parol proof might for this purpose, be admitted. 12 *Wheat.* 70. The corporation may not have acquired the title, and probably has not to any real estate; but this is not required by the act; the right of use is all that is necessary, although the act allows the title to be acquired.

Another objection is, that the logs were not surveyed as the act of incorporation requires. The ninth section of the act provides, " that all logs rafted at said booms, or its branches, shall be measured, and their quantity ascertained by a person to be appointed by the Surveyor General of *Bangor*, should such a surveyor be appointed, otherwise by a surveyor appointed by the selectmen of said town." The act of *March* 2, 1833, provides for the appointment of a Surveyor General for the county, " who shall make his residence in *Bangor* ;" and no other Surveyor General of lumber has been provided for or appointed. The act of incorporation had reference to a future Surveyor General as an officer to be created, and it designated him as the Surveyor General of *Bangor*, and when in the following year provision was made for such an officer, whose powers extended over the whole county, it is said that he is not the officer designated. It would scarcely be expected that the legislature, looking to the creation of a new office by a future legislature, should be able to refer to it by the exact definition, which might be adopted. The intention of the legislature is rather to be regarded, than any slight difference in the name of the officer. That intention must have been to obtain the advantage of the superior knowledge and skill to be expected from a Surveyor General in the appointment, and the uniformity of survey, which would result from it. This object would be equally secured whether he should be called Surveyor General of the county, or of *Bangor ;* and any advantages of local knowledge to be expected from a residence in *Bangor* were also secured. The act of incorporation, and the act providing for the office, both in substance apply to the same officer, and the difference is rather in the description of the same Surveyor General, than as denoting a difference of title. The intention of the legislature will be fully answered by considering the description as comprehending such Surveyor General, as should

reside and perform his duties in *Bangor.* To the objection, that " scalers, and not surveyors were appointed," the answer is, that the act of incorporation does not require the appointment of surveyors, but only that the " logs shall be measured by a *person* to be appointed by the Surveyor General of *Bangor ;*" and it is immaterial by what name he may be called.

The introduction of what was called the " book of records," was objected to, and the case finds, that the records were called for by defendants' counsel, but it does not find, that the counsel received or inspected any such book, until after his objection to its introduction had been overruled, and the book admitted. The rule is, that if a book or document be called for by a notice to produce it, and it be produced, the mere notice does not make it evidence ; but if the party giving the notice, takes and inspects it, he takes it as testimony, and it may be used, if material to the issue. *Sayer* v. *Kitchen,* 1 *Esp. R.* 210 ; *Johnson* v. *Gilson,* 4 *Esp. R.* 21 ; *Wharam* v. *Routledge,* 5 *Esp. R.* 235 ; *Wilson* v. *Bowie,* 1 *C. & P.* 8. Upon the view which has been taken of this case, the book was wholly immaterial.

*Exceptions overruled.*