WALTER E. HAWES & another *vs.* ANGLO-SAXON PETROLEUM COMPANY & others.

A bill in equity, under the St. of 1862, *c.* 218, to charge persons with individual liability as members or stockholders, for the debt of a manufacturing corporation, sufficiently describes such a holding of the stock as would bring the holders within the provisions of the statute, by alleging that the defendants were "members of and stockholders in said corporation, holding the stock of the same undivided;" and need not allege the par value of shares in the capital stock.

A corporation exists under the Gen. Sts. *c.* 61, § 1, so as to be able to contract debts, as soon as its first meeting has been held and its officers have been chosen, if not immediately upon the signing of the articles of association.

A corporation organized under the Gen. Sts. *c.* 61, for the purpose, specified in the articles of association, of " refining and preparing for use oil, coal and other minerals," is a manufacturing corporation, within the meaning of the St. of 1862, *c.* 218, without regard to what other purposes are also specified.

In an action on an account annexed, against a manufacturing corporation under the Gen Sts. *c.* 61, begun more than a year after the signing of the articles of association, and nearly a year after the first meeting of the signers and their choice of officers, the corporation filed an affidavit of merits and an answer, and afterwards submitted to a default and judgment thereon. In a suit in equity brought by the creditor, under the St. of 1862, *c.* 218 § 4, to recover from the stockholders individually the amount of this judgment, *Held* that the judgment, if not conclusive, was at least *primâ facie* evidence that the account was one on which the corporation was liable; even though the account bore date three days before said first meeting.

Until the division into shares of the capital stock fixed and limited by the articles of association of a corporation organized under the Gen. Sts. *c.* 61, the associated members of the corporation hold the whole capital stock in common; and by reason of such a holding may be individually liable under the St. of 1862, *c.* 218, for the debts of a manufacturing corporation.

BILL IN EQUITY, filed February 2, 1867, to charge individual defendants as members or stockholders in a manufacturing corporation, under the St. of 1862, *c.* 218, which declares, in § 2, that "the members or stockholders" in such a corporation, shall be jointly and severally liable for such of its debts as may be contracted before the capital is fully paid in and a certificate thereof duly recorded; and §§ 3–5 of which are printed in the margin.*

The bill alleged that the individual defendants had organized themselves as a manufacturing corporation, and by virtue of such organization had become a corporation, under the laws of this Commonwealth; that these individuals "were at the date of such organization aforesaid, and have ever since been, members of and stockholders in said corporation, holding the stock of the same undivided;" that "the capital stock of said corporation was fixed and limited by said corporation at five hundred thousand dollars;" that before the capital stock so fixed and limited had been paid in, and before any certificate

* "§ 3. No stockholder or officer in such corporation shall be held liable for its debts or contracts, unless a judgment is recovered against it and the corporation shall neglect, for the space of thirty days after demand made on execution, to pay the amount due, with the officer's fees, or exhibit to him real or personal estate of the corporation, subject to be taken on execution, sufficient to satisfy the same, and the execution shall be returned unsatisfied."

"§ 4. After the execution shall be so returned, the judgment creditor, or any other creditor, may file a bill in equity in behalf of himself and all other creditors of the corporation, against it, and all persons who were stockholders therein at the time of the commencement of the suit in which such judgment was recovered, or against all the officers liable for its debts and contracts, for the recovery of the sums due from said corporation to himself and such other creditors, for which the stockholders or officers may be personally liable by reason of any act or omission on its part, or that of its officers, or any of them, setting forth the judgment and proceedings thereon, and the grounds upon which it is expected to charge the stockholders or officers personally."

"§ 5. Such sums as may be decreed to be paid by the stockholders in such suit in equity shall be assessed upon them in proportion to the amounts of stock by them respectively held at the time when the suit in which said judgment was recovered was begun; but no stockholder shall be liable to pay a larger sum than the amount of stock held by him at that time at its par value."

thereof had been made and recorded as prescribed by law, the corporation contracted a debt to the plaintiffs; and duly set forth the recovery of judgment by the plaintiffs against the corporation, its neglect to pay or satisfy the execution issued thereon, and the return of the same unsatisfied.

Some of the individual defendants demurred to the bill, assigning for cause, that " the plaintiffs have not in and by their bill stated what, if any, amounts of stock in the alleged defendant corporation the defendants respectively held at the time when the suit, in which the judgment against the corporation is said to have been recovered, was begun; nor that the defendants, or any of them, held at that time any amount of said stock; nor that the corporation ever issued any amount of stock to any person; nor what the par value of the stock was; nor that the stock had any par value; nor that the stock was ever divided into shares; nor that any thereof were ever at any time issued to the defendants, or to any of them; nor that there ever were any shares of the stock." And the case was thereupon reserved by *Wells*, J., for the consideration of the full court, and argued in March 1868.

*L. A. Jones*, for some of the defendants. The individual liability of stockholders in a corporation is created by positive law; is to be construed strictly, and enforced only in the particular mode named in the statute; and is not to be extended beyond the limits to which by the statute it is plainly carried. *Gray* v. *Coffin,* 9 Cush. 199. *Erickson* v. *Nesmith,* 4 Allen, 233–235. In a suit under the St. of 1862, *c.* 218, the plaintiff must allege and prove what amounts of stock the defendants respectively held when the suit was begun, and the par value of the stock at that time; for otherwise no decree under § 5 can be entered against any stockholder. The individual defendants are not stockholders in this corporation, " holding the stock of the same undivided," within the meaning of the statute. It cannot be presumed that they held equal interests in the corporation. They cannot be made liable as stockholders, if the stock was never divided into shares, or if no shares thereof were ever at any time issued to them or subscribed for by them. And fur-

ther, the bill fails to show that the corporation ever had a legal existence. *Utley* v. *Union Tool Co.* 11 Gray, 139.

*D. E. Ware*, for the plaintiffs.

GRAY, J. This demurrer must be overruled. Among the allegations of the bill, which it admits, are that the corporation had been duly organized under the laws of the Commonwealth and that the individual defendants were stockholders in the corporation, holding the stock of the same undivided. If they were in fact joint owners of all the shares, it would support these allegations, and would make them liable under the St. of 1862, *c.* 218, as stockholders, upon proof of the other allegations in the bill. Whether they would be so liable, upon proof of a different state of facts, cannot be now decided. The question of their liability, and the proportions and limits thereof under the fifth section of the statute, if applicable to this case, may be determined, after the filing of an answer, at the hearing upon the merits, or by reference to a master, in case the plaintiffs should obtain a decree for the payment of any sum by the stockholders. The par value of the shares need not be alleged in the bill, but, if it should prove to be material, will be a proper subject of inquiry by the master. *Demurrer overruled.*

The same individual defendants thereupon filed an answer in September 1868, and, at a hearing afterwards, they, with one of the others, submitted the case on a statement of facts agreed with the plaintiffs substantially as follows:

On March 16, 1865, the defendants signed certain articles bearing that date, certifying that the subscribers " hereby associate themselves together as a corporation under the provisions of the Gen. Sts. *c.* 61, and the several acts in addition thereto, for the purpose of carrying on the business of mining oil, coal and other minerals; and agree," first, that " the name of said corporation shall be the Anglo-Saxon Petroleum Company;" second, that " the purpose for which said corporation is established is for carrying on the business of purchasing, selling, leasing and working oil, coal and other mineral lands; of mining coal oil and other minerals; of buying, selling and refining oil, coal

and other minerals ; preparing them for use, and vending and disposing of the same ; and doing all things requisite for the successful prosecution of said business ; " third, that " the amount of capital stock of said corporation is hereby fixed and limited at $500,000 ; fourth, that " the said corporation shall be established and have its principal place of business in Boston, and may prosecute its business without and beyond the limits of the Commonwealth, as the corporation elect." On April 1, 1865, the subscribers of these articles held their first meeting and chose officers.

In the superior court, in Suffolk, at October term 1866, the plaintiffs recovered judgment against the Anglo-Saxon Petroleum Company, by the default of the corporation after filing an affidavit of merits and an answer, for $4231.71 damages and $24.07 costs, in an action begun March 17, 1866, on an account dated March 29, 1865, for the price of three steam-engines and boilers.  On this judgment execution was issued November 16, 1866, and returned wholly unsatisfied January 15, 1867, the officer certifying, in his return, that, on November 22, 1866, by virtue of the execution he vainly made demand upon the treasurer of the corporation to pay the amount of the execution and costs of levy, and to expose and exhibit any property of the corporation whereon levy might be made ; that for more than thirty days from the date of said demand the corporation refused and neglected to pay and satisfy the execution, or exhibit any real or personal estate to be levied upon ; and that he had made diligent search for the chattels and lands of the corporation, but could find none within his precinct.

" The stock of said Anglo-Saxon Petroleum Company was never divided into shares, and never divided or apportioned among said subscribers.  No capital was ever paid in, and no certificate of any payment of capital was ever recorded.  No part of the amount due on said judgment has ever been paid, and no change has occurred among said subscribers to said articles."

On the foregoing facts, *Gray, J.*, ordered that the bill be taken for confessed against such of the defendants as had not ap-

peared, and reserved the case for the determination of the full court.

*D. E. Ware*, for the plaintiffs.

*L. Child*, for one of the defendants.

*E. H. Abbot*, for other defendants.   Before the St. of 1862, *c.* 218, the remedy of creditors of any corporation against its stockholders was by an action at law, which was a proceeding *sui generis*, which did not come within any of the usual forms of actions, and to which the provisions of the practice act did not apply.   Bigelow, C. J., in *Taylor* v. *New England Coal Mining Co.* 4 Allen, 577, 579.   Since the St. of 1862, *c.* 218, the only way in which creditors can proceed against stockholders, to recover a debt of a manufacturing corporation, is by a bill in equity in the nature of a creditor's bill.   *Peele* v. *Phillips*, 8 Allen, 86.   *Bond* v. *Morse*, 9 Allen, 471.   And the proceedings are settled by the precedents and established practice in ordinary cases in equity, except where they are modified by the statute itself, as, for instance, in regard to nonjoinder of parties.   See *Essex Co.* v. *Lawrence Machine Shop*, 10 Allen, 352.   The rule in *Holyoke Bank* v. *Goodman Paper Manufacturing Co.* 9 Cush. 576, 582, that, if the corporation admits its own liability by a default, a stockholder cannot deny that liability, depended upon acts repealed by the St. of 1862, *c.* 218, and applies only to proceedings now obsolete.

The statute requires proof that the property of the corporation is exhausted, before it allows any recourse to stockholders or officers.   For this purpose, a judgment must be obtained against the corporation, a demand made, and the execution returned unsatisfied.   When these acts have been done, the bill will lie; but not otherwise.   But it appears from the language of §§ 3, 4, that it is not the object of the statute by such judgment to estop the stockholders from disputing either the liability for or the amount of the debt.   Section 4 provides that, after the execution is returned, " the judgment creditor or any other creditor may file a bill in equity in behalf of himself and all other creditors of the corporation."   If then " any other creditor " brings the bill in the first instance, the court must necessarily

determine, in this proceeding in equity, whether or not the corporation is liable at all on his debt; and, if liable, the amount of the liability. So, too, if "other creditors" come in as parties to the bill with the judgment creditor, the liability of the corporation, and the amount of that liability, on their respective claims, must be determined in equity. The statute makes no distinction in the proceedings required, whether the plaintiff in equity is the judgment creditor, or a creditor who intervenes, by petition or otherwise, on a debt upon which no judgment has been recovered. It does not anywhere relieve the judgment creditor, as against the corporation, from the obligation to prove his debt *ab initio*, which rests upon subsequent creditors complaining in equity; and why should it as against stockholders, who could do nothing to prevent the recovery of that judgment? Section 4 also speaks of the bill "for the recovery of the sums due from said corporation to himself and such other creditors." Section 5 speaks of "such sums as may be decreed to be paid." These phrases, in their connection, imply that this court is in all cases to determine the liability of the corporation for the debt sought to be collected. It does not speak of enforcing the judgment debt against the stockholders, but leaves the question of liability, and amount of liability, to be settled, in all cases, in this proceeding in equity. The provision, that all stockholders are liable from the commencement of the suit in which the judgment is recovered, is for the common benefit of all creditors of the corporation. It confers no special privilege on the judgment creditor, but it does imply that stockholders may contest the claim as it stood when the suit began, and negatives the idea of its merging in the judgment, so far as their rights are concerned.

It would be contrary to equity practice, as well as unjust, to allow the judgment by default against the corporation any weight as evidence against these individual defendants. They were not parties or privies to its recovery; had no notice of the action in which it was recovered; and would have had no opportunity and no right to be heard therein, even if they had known that it was pending. The judgment was recovered No-

vember 15, 1866.    The act allowing stockholders to appear and defend suits against corporations was not passed until February 1867.    St. 1867, *c.* 36.    *Byers* v. *Franklin Coal Co.* 14 Allen, 470. They could not maintain either a writ of error, or of review, to reverse the judgment.    See *Inman* v. *Mead,* 97 Mass. 310, 315. And, even if this judgment is allowed to be *primâ facie* evidence of a corporate indebtedness, in this proceeding against stock-holders, it is rebutted by the fact, which appears in the record, that on March 29, 1865, there was no corporation and could be no corporate indebtedness; and in this proceeding in equity, where the judgment against the corporation collaterally affects the rights of these respondents, they may, by an established rule of law, prove that judgment, though not reversed, to be errone-ous.    *Vose* v. *Morton,* 4 Cush. 27, 31.

A merger of a simple contract debt in a judgment has been permitted, for the benefit and relief of stockholders, in the old procedure at law.    *Handrahan* v. *Cheshire Iron Works,* 4 Allen, 396.    *Taylor* v. *New England Coal Mining Co.* Ib. 577.    See also *Bond* v. *Clark,* 6 Allen, 361, 363.    But a merger is never permitted, when it destroys equitable rights.    Here it would only cover a defect, which is radical and manifest, in aid of a process which this court has termed " a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law," and which " is therefore to be construed strictly, and not ex-tended beyond the limits to which it is plainly carried by such provisions of statute."    Shaw, C. J., in *Gray* v. *Coffin,* 9 Cush. 192, 199.

The judgment then is not evidence against the individual de-fendants of the existence of the alleged defendant corporation. The court will look at the condition of things at the time when the contract was made on which that judgment rests.    *Utley* v. *Union Tool Co.* 11 Gray, 139.    *Holyoke Bank* v. *Goodman Manufacturing Co.* 9 Cush. 582.    When it was made, the al-leged corporation had no legal existence.    The articles of agree-ment had been signed, and that was all.    An organization had not been attempted; and the associates had no officers until

three days later.   The articles were signed March 16; the con-
tract was made March 29, the subscribers held their first meet-
ing April 1.   See Gen. Sts. *c.* 61, § 1; Chapman, J., in *Perkins*
v. *Union Buttonhole & Embroidery Machine Co.* 12 Allen, 278;
*Bond* v. *Clark,* 6 Allen, 361, 363.   And even if the corporation
had a kind of existence at the time when the contract was made,
there is no evidence that any one was then empowered to incur
debt, or make a contract, in its behalf.

The contract then, not being valid as against these individual
defendants when it was made, cannot now be enforced against
them, without proof, not only that the alleged corporation was
afterwards legally organized, but also that it subsequently rati-
fied the contract.   But it never was legally organized.   And,
even if it ever had been so, there is no evidence of a subsequent
ratification.   The burden of proof is on the plaintiffs; and the
liability of defendants in such suits as this is not to be extended
by presumption.   The association contemplated in the articles
of agreement never became a corporation, because the subscribers
did not " comply with the provisions of " the Gen. Sts. *c.* 61, by
completing an organization according to the requirements of the
statute.   The mere fact of a meeting and a choice of officers is
all the evidence of attempted organization at any time.   Gen.
Sts. *c.* 61, § 1.

Finally, the association, if a corporation at all, was a mining
corporation, and so the provisions of the St. of 1862, *c.* 218, do
not apply to its members.

GRAY, J.   All that is necessary to constitute a corporation
aggregate is the grant of a franchise by the government, assented
to by the grantees.   In the case of the creation of a private cor-
poration by special charter, indeed, an acceptance is ordinarily
required in order to give it effect.   Angell & Ames on Corpora-
tions, §§ 81, 82.   But an act of the legislature, incorporating
certain persons who have applied for a charter, and their asso-
ciates, may constitute the persons named a corporation at once,
without further action on their part, either in the admission of
associates, the choice of officers, or the division of the capital
stock.   *Frost* v. *Frostburg Coal Co.* 24 How. 278.   *Day* v. *Stet-*

*son*, 8 Greenl. 365. *Penobscot Boom Co.* v. *Lamson*, 16 Maine 224. *New York Fire Department* v. *Kip*, 10 Wend. 266. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282. *Walworth* v. *Brackett*, 98 Mass. 98. Gen. Sts. *c.* 68, § 3.

By the Gen. Sts. *c.* 61, § 1, " three or more persons who shall have associated themselves together by articles of agreement in writing, for the purpose of carrying on any mechanical, mining, quarrying or manufacturing business, except that of distilling or manufacturing intoxicating liquors, and shall have complied with the provisions of this chapter, shall be and remain a corporation under any name indicated in their articles of association, and which is not previously in use by any other corporation or company." The meaning and extent of the clause which requires that the associates " shall have complied with the provisions of this chapter" may be better understood by referring to the St. of 1851, *c.* 133, the first general law which authorized such corporations to be formed by voluntary association, and the intervening acts in addition thereto, of all which the sixty-first chapter of the General Statutes is substantially a reënactment. By § 1 of St. 1851, *c.* 133, persons who should " associate themselves together according to the provisions of this act" under any name by them assumed, for either of the purposes specified, and who should " comply with all the provisions of this act," were declared to be a body politic and corporate. All the provisions of that act, which such a corporation was required by its terms to comply with at any time, were, that the articles of association should state the name of the corporation, fix and limit the amount of its capital stock, and state the purpose for which and the town or city in which the corporation should be established and located ; that, before the corporation should commence business, its officers should make, publish and file a certificate of those and other facts; and that the name of the corporation should indicate its corporate character, and not be the name of any other corporation or company. St. 1851, *c.* 133, §§ 1–6. And it was held that even an irregularity in the articles of association, such as the adoption of a name already belonging to another company, would not enable the corporation

to defeat an action against it by a creditor. *Dooley* v. *Cheshire Glass Co.* 15 Gray, 494. The direction, contained in the Gen. Sts. *c.* 61, § 3, as to the mode of calling the first meeting of such a corporation, was not in the original statute, but was first inserted in the St. of 1855, *c.* 478, § 2, and is as consistent with holding the corporation to be already organized as with treating the first meeting as necessary to its organization. The first section of the Gen. Sts. *c.* 61, is certainly not to be construed literally as requiring a compliance with all the provisions of the chapter as a condition precedent to the existence of a corporation; for many of them necessarily assume a corporation to have been already created, such, for instance, as making the officers of the corporation liable for its debts until they have signed and filed certain certificates. §§ 8–12. *Merrick* v. *Reynolds Engine & Governor Co. ante,* 381. The manifest intent of the first section, viewed in connection with the rest of the chapter, is, that a corporation shall exist at least as soon as the first meeting has been held and officers have been elected, if not immediately upon the signing of the fundamental articles of association, by which the intention of the associates to avail themselves of the privileges conferred by the legislature is manifested, the name of the corporation determined, the amount of capital stock fixed, and the place in which and the purpose for which the corporation is established are specified. *Utley* v. *Union Tool Co.* 11 Gray, 139. *Perkins* v. *Union Button-Hole & Embroidery Machine Co.* 12 Allen, 273. *Newcomb* v. *Reed,* Ib. 363.

When a corporation has been once created according to law, the incorporated associates who hold the corporate franchise are members of the corporation; and a subscriber for shares, although he has received no certificate of stock, or the stock has not even been divided into shares, is a member of the corporation, and a stockholder, within the meaning of a statute making the stockholders of the corporation personally liable for its debts. *Chester Glass Co.* v. *Dewey,* 16 Mass. 94. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 288, 289. *Spear* v. *Crawford,* 14 Wend. 20.

The St. of 1862, *c.* 218, entitled "an act to define and regulate the enforcement of the liabilities of officers and stockholders of manufacturing corporations," contains the following provisions, upon the construction and effect of which this case depends.

By § 2, "the members or stockholders in such corporations shall be jointly and severally liable for its debts or contracts in the following cases, and not otherwise : First, for such as may be contracted before the capital is fully paid in, and a certificate thereof duly recorded."

By § 3, no stockholder in such corporation shall be held liable for its debts or contracts, unless a judgment is recovered against the corporation, demand for payment made upon the corporation and not complied with for thirty days, and the execution returned unsatisfied.

By § 4, "after the execution shall be so returned, the judgment creditor, or any other creditor, may file a bill in equity in behalf of himself and all other creditors of the corporation, against it, and all persons who were stockholders therein at the time of the commencement of the suit in which such judgment was recovered," for the recovery of the sums due from said corporation to himself and such other creditors, for which the stockholders may be personally liable, by reason of any act or omission on the part of the corporation or its officers.

By § 5, "such sums as may be decreed to be paid by the stockholders in such suit in equity shall be assessed upon them in proportion to the amounts of stock by them respectively held at the time when the suit in which said judgment was recovered was begun ; but no stockholder shall be liable to pay a larger sum than the amount of stock held by him at that time at its par value."

Among the purposes for which the defendants incorporated themselves were "refining oil, coal and other minerals," and "preparing them for use." They were therefore strictly a manufacturing corporation, and equally within the St. of 1862, *c.* 218 as a similar corporation established by special charter would be. *Peele* v. *Phillips,* 8 Allen, 86. *Bond* v. *Morse,* 9 Allen, 471.

The bill was held to be sufficient when this cause was before us upon the demurrer. All questions of variance between the pleadings and evidence have been waived by submitting the case to our decision upon an agreed statement of facts. *Russell* v. *Loring*, 3 Allen, 121. *Folger* v. *Columbian Insurance Co.* 99 Mass. 267.

It is admitted that no part of the capital stock of the corporation has ever been paid in, and no certificate thereof recorded; and that the plaintiffs have recovered a judgment in an action against the corporation, and had the execution issued thereon duly served upon the corporation and returned unsatisfied.

That action was brought on the 17th of March 1866, a year after the signing of the defendants' articles of association, and almost a year after the associates had held their first meeting and elected officers. Upon any construction of the statutes, the corporation had thus, long before the bringing of that action, been called into existence and made a legal person, capable of holding property and of suing and being sued, and had a board of officers competent to bind the corporation by a new agreement or by ratification of an old one made before the corporation was capable of contracting. The corporation, thus fully organized and represented, filed an affidavit of merits, and afterwards submitted to a default and judgment thereon. That judgment, if not conclusive in this suit, is at least *primâ facie* evidence that the debt sued on was a debt for which the corporation was liable. The mere fact that the account annexed to the declaration bears date three days before such election of officers is not sufficient to rebut the evidence of liability, afforded by the judgment itself.

The amount of capital stock of the corporation was fixed and limited in accordance with the Gen. Sts. *c.* 61, § 6. The stock not having been divided into shares or certificates issued, the associated members of the corporation were the holders of the whole capital stock in common, and would seem, upon the facts agreed, to be liable in equal proportions for such sums as may be decreed to be paid by them in this suit. But as the question of the amount to be assessed upon each has not been argued

by them, but only the question whether they are liable at all, any additional facts and considerations, bearing upon the question of the amounts and proportions in which they are to be charged, may be submitted to the master, and, on the coming in of his report, to the court.

*Decree for the plaintiffs ; case referred to a master.*