EUGENE SMITH, as Executor of the Will of RICHARD PATRICK, Deceased, Respondent, v. FREDERICKA RENTZ, Appellant.

*Evidence — when books and accounts, produced on notice and inspected, become evidence — the books of one dealing only in money are competent evidence of loans — checks, when evidence.*

Upon an examination before trial a party produced, under a notice requiring them, the books and papers of his testator, and the attorney for the opposite party asked leave, and was allowed, to inspect them.

*Held,* that such books and papers, thus inspected, thereby became, at the option of the party producing them, evidence in his favor upon the trial of the action.

Where books of account, kept by one dealing only in money, relate only to transactions in money, entries made in them, accompanied by the usual proof required in such cases, are competent evidence of the facts stated, to the same extent as in the case of the books of other traders.

Where an action was brought to recover moneys paid, as alleged, by plaintiff's testator for the benefit of the defendant, checks of the testator, given to pay what appeared to be debts of the defendant, and coincident with charges made against her in his accounts rendered, are slight but competent evidence in support of such charges.

Appeal by the defendant Fredericka Rentz from a judgment entered in the office of the clerk of the county of New York, on the 1st day of August, 1890, after a trial had before a referee.

*Leopold Leo,* for the appellant.

*H. B. Closson,* for the respondent.

Daniels, J. :

The action was brought to recover an alleged balance of account for money paid out by the testator for the defendant. It was proved, to a reasonable degree of certainty, that she deposited moneys with him from time to time, and that he paid them out for taxes, repairs and other expenses for her, incurred in and about her property and the management of her household affairs. He died on the 24th of September, 1887, and for a period of years before that, he is stated, by the defendant's witness Zimmerman, to have been at her house three or four times a week, and when persons were working there

he directed them what they should do.   For bills sanctioned by her he made payments to her creditors, and the same thing took place as to other bills which were authenticated by persons performing the services and delivering materials, which were not expressly sanctioned by her.   And to make definite proof of the amounts from time to time paid on her account, the books of the testator were produced and offered in evidence.   In support of the offer, evidence was given tending to establish the facts that the testator himself kept these books, or directed the entries to be made in them, when that was done by another person, and that the books were correct, so far as other persons had settled their accounts with the testator from them.   It was also proven that the plaintiff was examined as a witness on behalf of the defendant, under an order obtained by her before the trial.   And on that examination the books and papers of the testator were produced in compliance with a notice, requiring them, served by the attorney for the defendant upon the plaintiff's attorney.   When they were produced before the justice, and the examination was in progress, the defendant's attorney asked leave to inspect them, and he was permitted to do so in compliance with his request, and did examine the ledgers and other papers. The referee after proof of these facts received the books in evidence. But, afterwards, when it was agreed that there had been no inspection of the cash-book, he struck that out as evidence, on the motion of the defendant's counsel.   It is evident, therefore, that the ledgers were retained solely because of their production under the notice and their inspection by the attorney and counsel of the defendant. The other evidence relating to the cash-book as well as the ledgers, in the final judgment of the referee, must have been considered insufficient to render the books admissible.   If it had not been, it is clear that it would not have been excluded from the case, because of the fact that it had not been inspected after it had been produced. The admissibility of the ledgers must, therefore, depend upon this production and inspection of those books.

That these facts rendered them evidence for the plaintiff has not been clearly sustained by the authorities in this State.   The rule allowing books and papers to be received, after their inspection by the adverse party, was not approved by SPENCER, J., in Kenny v. Clarkson (1 Johns., 385, 394), nor by the justice writing the opinion

in *Carradine* v. *Hotchkiss* (120 N. Y., 608). But the point was there left undecided, as it was not important to settle it for the purposes of the decision. But in the case of *Williams* v. *Davis* (7 Civ. Pro. Rep., 282) the fact that the testator's books were present and made the subject of reference in the course of a conversation between the executor and the defendant was held sufficient to entitle them to be used as evidence against the latter on the trial. And that authority goes far towards sustaining the ruling of the referee in this case. That production, pursuant to notice, and the subsequent inspection, would not, without further proof, entitle the party producing the books or papers to read them in evidence, was held in *Withers* v. *Gillespy* (7 Serg. & R., 10) and in *Austin* v. *Thomson* (45 N. H., 113), where a very full examination of the authorities then existing on the subject was made.

But in the later cases of *Calvert* v. *Flower* (7 C. & P., 386) the rule was so declared by Lord DENMAN as to entitle the evidence to be received. And the same conclusion was followed in *Anderson* v. *Root* (8 Sm. & M. [Miss.], 362), and a very decided approval of it was expressed in *Jordan* v. *Wilkins* (2 Wash. C. C., 482). The rule, as it was given in the opinion in *Penobscot, etc., Company* v. *Lamson* (4 Shep. [16 Me.], 224) is : " That if a book or document be called for by a notice to produce it, and it be produced, the mere notice does not make it evidence, but if the party giving the notice takes and inspects it, he takes it as testimony, and it may be used if material to the issue." And that was adopted as a correct statement of the law in the later case, before the same court, of *Blake* v. *Russ* (33 Me., 360). And the same result was reached, after a consideration of earlier cases, in *Long* v. *Drew* (114 Mass., 77). The preponderance of authority was, therefore, with the referee, and the exception to this ruling cannot be sustained.

The testator had no clerk in the sense in which that word has been used in the cases defining the proof under which the books of the party will be received as evidence. The entries made by his brother were, by the direction of the testator when made in the cash-book, of original entry. And so were the postings made in the ledgers. And those services rendered by another will not exclude the books as evidence. (*McGoldrick* v. *Traphagen*, 88 N. Y., 334.) In all other respects the evidence brought these books within the

general rule entitling them to be received as evidence. But the referee probably acted under the impression, when he rejected the cash-book, that the books were inadmissible under the established rule because the accounts were wholly of transactions in money. And in the case of *Case* v. *Potter* (8 Johns., 211), it was passingly said that the books kept by the party himself were not evidence of money lent. But the entry there was of a single transaction, being a loan of ten dollars. The question was not presented whether the books of a party kept by himself would be evidence when his business was dealing in money, as that of the testator was. If it had been, there is a probability that such books would have been held to be evidence. For the rule, broadly stated, was declared to apply " to the regular entries of the party in the usual course of his business." (Id., 213.) And the entries in these books were of that description. And no sound reason presents itself requiring their exception. They were equally the books of a trader carrying on his business and keeping his accounts himself with his customers, which included others besides the defendant. And so it has already been held in *Burke* v. *Wolf* (38 N. Y. Supr. Ct., 263) and *Young* v. *Jones* (8 Iowa, 219). And the principle was applied to cash items not exceeding six dollars and sixty-seven cents in *Bassett* v. *Spofford* (11 N. H., 167). But if the books are admissible to that extent, then there is no other than an arbitrary dictum for that restriction, and they should be allowed as evidence so far as to comprehend all the entries strictly in the course of the business of the party. The necessity and reason for the latter is equally as decisive as it is in the other case. These books should all, therefore, have been retained as evidence by the referee. But as the items in the cash-book were all posted into the ledgers he did, notwithstanding the exclusion of the cash-book, have all the evidence before him which the books could furnish. The ledgers were the complement of the cash-book, and as such legally forming a part of this species of evidence to be produced. (*Bonnell* v. *Mawha*, 37 N. J. L., 198.) And the defendant could not object to their use without the cash-book, as long as that book had been excluded from the evidence upon the motion of her own counsel. The ledgers contained all that was essential, and could be intelligently acted upon as the evidence. And as the true construction of the rule will

include the books of a money dealer, and these books were proved as that requires it should be done (*Dooley* v. *Moan*, 57 Hun, 535), they were evidence in the case, although their admissibility was finally placed upon the fact of their inspection by the counsel for the defendant.

The accounts, as they have been transcribed from the ledgers, appear to have been consecutively as well as carefully entered, and they exhibited the balance found by the referee to be owing from the defendant. To subject these books to discredit, the defendant produced and proved a statement made by the testator that he had received from her the sum of $2,500, and had placed it to her credit on his books. And the antecedent credits contained in the accounts confirm this statement. After that he added to the statement the acknowledgment of five additional sums of $100 each, and they appear by corresponding credits to her in his accounts. This evidence, therefore, rather confirmed than disaffirmed the correctness of the books.

A further statement made by the testator, extending from the 12th of January, 1887, on the credit side, to the last of May, in the same year, and on the debit side from July 10, 1886, to April 18, 1887, was produced in evidence by the defendant. A balance in her favor of twenty-one dollars was brought down as the result of the items. This was commenced with a credit of $100 on the day of the last credit for the same amount on the preceding statement; and it was probably for the reason that it was a repetition that a line had been drawn through it. But all the items on this statement formed parts of the accounts supplied by the books, which stated a balance in the testator's favor on the 20th of January, 1887, eight days after the first credit on the statement, of $3,951.59. It is apparent, therefore, that this was not intended as a full or complete statement of the condition of the accounts, but only of certain items contained in it. The accounts on the books showed a larger balance then than finally remained, and was allowed by the referee. That was fully maintained by the items, and it cannot be presumed, with any degree of probability in favor of its correctness, that the testator designed to disclaim his right to this balance by this partial and incomplete statement. It is much more probable

that it was made and delivered to answer some special inquiry or object not now capable of being clearly developed by evidence.

A large number of checks drawn by the testator were allowed, against the objections and exceptions of the defendant's counsel, to be given in evidence. They were undecisive evidence at the most, where they were unattended with any act on her part. But many were given to pay what appeared to be her debts, and, generally, they were coincident with charges made against her. They were paid with funds subject to his order, and were admissible, certainly, to prove that these moneys had been paid out by him. To some slight extent, at least, they supported his charges, and the rulings under which they were received cannot be held to have been erroneous.

Questions were asked of the defendant, as a witness in her own behalf, which in several instances she seems to have been competent but at first was not allowed to answer. But her evidence was afterwards received and the exceptions in that manner obviated. Proof was also given of the payment of the testator's check for $17,100 on the purchase-price of the residence of the defendant. The sum of $15,000 of this amount was shown to have been obtained from the sale of a dwelling on Fifteenth street, which she had sold. She was asked where the residue of the money came from, and answered that it was " saved money I had." This was, on motion of the plaintiff's counsel, stricken out. And in a subsequent answer she testified that the rest was her money, and that also was stricken out on like motion. But it is not necessary very especially to discuss the regularity of these rulings, for the reason that the answers standing by themselves would have been of no advantage to the defendant. In a general sense it was her money that was paid for the place, but that this difference was, in fact, paid by her to the vendor, or placed specially with the testator for that payment, these answers did not tend to prove. If it was designed by them to create the impression that she had given the difference to the testator, and that made the full amount of his check, then it was incompetent for her to give the evidence against the plaintiff as the representative of the other party to the transaction. But in no view was the defendant injured by rejecting these answers.

A very large number of other exceptions were taken to the

rulings of the referee and to his final decisions. But they do not. seem to merit special consideration, for the referee seems to have been right in his determination, which really depended upon the principles which have been applied.

The judgment should be affirmed, with costs.

Van Brunt, P. J., concurred.

Judgment affirmed, with costs.

